UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Lee BARNDT,
Defendant–Appellant.

No. 89–8084
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 18, 1990.

---

Victor K. Sizemore, Santa Theresa, N.M., for defendant-appellant.

LeRoy Morgan Jahn and Philip Police, Asst. U.S. Attys., and Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, GEE and DUHÉ, Circuit Judges.

PER CURIAM:

On three separate occasions, Texas defendant-appellant Robert Lee Barndt ("Barndt") cut strands of copper wire from a hanging communications line on the Army's McGregor Missile Range in New Mexico. On each occasion, Barndt sold the wire to a scrap metal dealer in El Paso, Texas. A federal grand jury returned a three-count indictment charging Barndt with unlawfully selling government property under 18 U.S.C. § 641. Each count represented a separate sale. Barndt pleaded guilty to selling the wire on November 25, 1988, and the government agreed to dismiss the charges relating to sales on February 1 and February 11, 1989. The district court sentenced Barndt to five years of supervised probation and ordered him to pay restitution of $370.50 to the scrap metal dealer to whom the wire was sold and $30,200 to the United States Army Infor-

mation Systems Command at Fort Bliss, Texas.

Barndt appeals two aspects of his sentence. First, he argues that the district court's calculation of the amount of restitution was clearly erroneous and procedurally incorrect. The government concedes that we must remand this case because the district court calculated the amount of restitution based on the total amount of wire that Barndt cut on all three occasions. Under the Supreme Court's recent decision in *Hughey v. United States*, —— U.S. ——, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), the government is correct. Barndt also argues that the district court committed error when it added two points to his offense level under the Sentencing Guidelines for more than minimal planning. We disagree. Accordingly, we affirm in part, vacate in part, and remand.

I. Restitution issues.

There was considerable confusion in the district court as to how much wire Barndt actually stole. The district court sentenced Barndt on October 10, 1989, but granted Barndt's motion to stay sentencing pending an evidentiary hearing on the proper amount of restitution. Barndt objected to the presentence investigation report ("PSI") which stated that Barndt stole approximately 76,400 feet of wire. The probation officer apparently based his calculation on reports that approximately 76,400 feet of wire were missing from Army communications lines. Barndt claimed that he was responsible for the loss of only about 16,800 feet of wire. The amount he sold to the scrap metal dealer appears in the record only in pounds. Following two evidentiary hearings, the government and the court apparently agreed with Barndt, and the court based restitution on the 16,800 foot figure which represented the total amount of wire that Barndt stole on all three occasions.

There was also confusion as to the proper amount of restitution. Evidence established that replacing the wire stolen with like wire would cost the Army approximately $8844: $4046 for materials and $4798 for labor. The record also shows that the government seized some wire from the scrap metal dealer. The confusion resulted from the fact that the type of wire stolen is now obsolete and may be commercially unobtainable. The Army has been planning to replace the old copper wire with some other communications system. The record mentions that the Army is considering such possible alternatives as a buried cable system, a cellular system, and a microwave system. The district court calculated restitution based on an estimate that it would cost the Army approximately $30,200 to replace the copper wire with more durable copper steel alloy wire. The record is unclear as to whether the cost figure for the copper steel alloy wire replacement was calculated based on buried wire or wire strung from poles.

The government properly concedes that we must remand this case in light of *Hughey*. In that case, the Supreme Court held that the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. §§ 3663, 3664 authorizes restitution awards only for the specific conduct that forms the basis for the offense of conviction. *See Hughey*, 110 S.Ct. at 1981. In this case, Barndt pleaded guilty and was convicted of selling government property on November 25, 1988. The district court did not have the benefit of *Hughey*'s guidance and calculated restitution based on the total amount of wire that Barndt cut through February of 1989. On remand, the district court should recalculate restitution based on the amount of wire that Barndt sold on November 25, 1988.

Barndt argues that the district court's calculation of the value of replacing the wire was clearly erroneous. We are troubled by suggestions from the record that the $30,200 figure represents the cost of installing an upgraded system. The Army wants to improve its communications, but has not decided on an alternative to its copper wire network because of planning and budgetary considerations. Restitution should not include payment for any improvements the Army wishes to make. We recognize that the wire Barndt cut may be unobtainable, and that the cost of replace-

ment would be increased because the stolen property is no longer available. Restitution should be based on the cost of putting the Army where it was before Barndt cut the wire. The court should calculate the amount of restitution based on the damage Barndt inflicted by cutting the wire that he sold on November 25, 1988. This also means that the court should not include damage caused by Barndt in later thefts or by other thieves.

■ The record indicates that the government seized the wire that Barndt sold on November 25, 1988. The VWPA provides that a sentencing court may order a convicted defendant to return stolen property to the owner. It therefore allows the sentencing court to subtract the value of the returned property when calculating restitution. *See* 18 U.S.C. § 3663(b)(1). In calculating restitution, the district court should consider whether the Army could mitigate the damage it suffered by restringing the seized wire when making its repairs.

Barndt makes two additional procedural attacks on the district court's restitution order. First, he argues that the court erroneously failed to make findings on his financial ability to comply with the restitution order. Second, he argues that the PSI did not contain a victim impact statement and that this omission was error. We disagree with both arguments.

■ Barndt correctly states that the district court did not make findings relating to his ability to make restitution. Barndt incorrectly argues that the district court was required to do so. We have held that the VWPA only requires a court to consider the defendant's ability to pay and does not require explicit findings. *See United States v. Ryan*, 874 F.2d 1052, 1053 (5th Cir.1989). According to the Federal Rules of Criminal Procedure, the PSI must contain information about the defendant's financial condition. *See* Fed.R.Crim.P. 32(c)(2)(A). Barndt's PSI contains a detailed list of his assets, liabilities, and earnings. The probation officer explicitly stated, and Barndt did not challenge the assertion, that he could comply with the court's

order. Moreover, Barndt does not argue that he is incapable of paying the ordered restitution. We conclude that the district court adequately considered his financial condition.

■ Barndt's second procedural attack is also legally incorrect. Rule 32(c)(2)(D) only requires that the PSI must contain statements assessing "the financial, social, psychological, and medical impact upon, and cost to, any individual against whom the offense has been committed." Fed.R. Crim.P. 32(c)(2)(D). In this case, the victim was not an individual, it was the Army. The PSI contained information about the financial impact of the crime. We assume that the Army's social and psychological suffering was *de minimis*. No medical impact is asserted. The PSI did not violate Rule 32, and Barndt has not shown that he was prejudiced by the lack of a more detailed victim impact statement.

## II. Sentencing Guidelines Issue.

■ The district court sentenced Barndt under Sentencing Guideline § 2B1.1 ("Larceny, Embezzlement, and Other Forms of Theft") and added two points to the base level offense for "more than minimal planning" under § 2B.1(b)(4). Barndt disputes the district court's conclusion that he engaged in more than minimal planning. Whether or not a defendant engages in more than minimal planning is a fact question reviewed under the clearly erroneous standard. *See United States v. Mejia–Orosco*, 867 F.2d 216, 220–21 (5th Cir.1989), *cert. denied*, — U.S. —, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989) (holding that propriety of upward adjustment for leadership role was fact question reviewable under clearly erroneous standard).

■ The record indicates that Barndt received information from telephone workers that the cables from which he took the wires were not in service. Barndt later formed the intent to take the wires, collected cutting tools, cut the wires, loaded the wires into his vehicle, sought a buyer, transported the wires to the buyer, and made the sale. The comments to § 1B1.1

indicate that a shoplifter who takes an item from the shelf of a store, walks to a secluded part of the store, and conceals the item in a coat pocket does not engage in more than minimal planning. *See* U.S.S.G. § 1B1.1, Commentary, Application Note 1(f). They also indicate that a thief who obtains information about a special shipment of goods and waits for the shipment to arrive at a store engages in more than minimal planning. *See id.* Barndt's crime was selling government property. He formed an intent to commit the crime in advance. He took several discrete steps in furtherance of his plan before he actually sold the wire. We cannot say that the district court's determination that Barndt engaged in more than minimal planning was clearly erroneous.

For the reasons set forth in this opinion, the decision of the district court is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.