**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jeffrey W. HARRISON, Defendant–
Appellant.**

**No. 94–2056.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 12, 1994.

Decided Dec. 13, 1994.

Francis D. Schmitz, Asst. U.S. Atty., Milwaukee, WI (argued), for plaintiff-appellee.

Jeffrey W. Jensen, Milwaukee, WI (argued), for defendant-appellant.

Before CUMMINGS, MANION and KANNE, Circuit Judges.

MANION, Circuit Judge.

Jeffrey Harrison was charged with two counts of theft of food stamps from a United States post office, 18 U.S.C. § 1708, and one count of impeding a United States postal

inspector. 18 U.S.C. § 111. He pleaded guilty to one count of theft, and the remaining charges were dropped. The district court imposed a term of 33 months' imprisonment. On appeal, Harrison challenges only his sentence, arguing that his base offense level should not have been increased pursuant to the obstruction of justice and "more than minimal planning" provisions of the Sentencing Guidelines. We affirm.

## I.

In December 1993, U.S. postal inspectors were informed of missing food stamps at the Harbor Station post office in Milwaukee, Wisconsin. On January 31, 1994, through electronic surveillance, postal inspectors observed Harrison, a contract custodian, as he entered the post office and walked directly to a cart where food stamp letters are placed for redelivery. Harrison removed several letters from the cart, including an envelope containing food stamps that had been placed there by the postal inspectors.

On February 5, 1994, Harrison entered the post office at 5:45 a.m., hung his coat in the custodial closet and walked to a desk near the cart. He removed mail from the desk and then walked into the supervisor's office with the mail and empty trash bags. While he was in the office, postal inspectors heard what sounded like paper being torn. Harrison also made a phone call at 6:10 a.m. and was overheard saying, "Greg, I'll be there in about 30 minutes." When Harrison exited the office, he did not have the mail in his hands. He then removed a bundle of letters from the cart, placed them in a trash can he was carrying, and entered the custodial closet. He walked out of the closet approximately three minutes later without the letters and headed towards the lobby. He left the building at approximately 6:50 a.m. A postal inspector recovered twenty food stamp envelopes and address inserts from the post office trash. Food stamps were missing from all the envelopes except one.

Following his arrest on February 7, 1994, Harrison appeared before Magistrate Judge Robert L. Bittner. Magistrate Judge Bittner told Harrison that he had the right to remain silent in these proceedings and that anything he said could be held against him. He was also informed of his right to an attorney. Harrison stated that he understood his rights and asked that an attorney be appointed to represent him. The prosecutors informed the judge that they believed Harrison was presently on parole for an offense committed in Pennsylvania and that they were waiting for verification. Harrison interrupted and asked if he could speak. He then stated that he was "not on any parole." The Philadelphia Parole Office subsequently provided information indicating that at the time Harrison committed the instant offense, he was in fact under parole supervision for theft and firearm charges, perjury, and retail theft. The parole term for the theft and firearm charges was due to expire on May 19, 1994. The magistrate judge temporarily detained Harrison for ten days or until the State of Pennsylvania filed a detainer against him pursuant to 18 U.S.C. § 3142(d). Following a detention hearing, Harrison was detained pending trial because "no condition or combination of conditions exist which would allow this defendant to be released." 18 U.S.C. § 3142(e).

At sentencing, Harrison testified that he did not intentionally mislead Magistrate Judge Bittner about his parole status because he believed that he was entitled to four months good time credit which would move up his parole expiration date to January 19, 1994. Harrison admitted, however, that he left Pennsylvania without notifying his parole officer and that he was aware that a parole revocation hearing was to be scheduled.

The district court determined that Harrison's false statements to the magistrate judge regarding his parole status constituted obstruction of justice, warranting a two-level increase in his base offense level pursuant to U.S.S.G. § 3C1.1. The court concluded that there was no legitimate basis for Harrison's belief that he was no longer under parole supervision and that there was a "[v]ery strong inference" that Harrison denied he was on parole to influence the magistrate judge in viewing more favorably his request for pretrial release. The district court also found that Harrison qualified for a two-level increase under U.S.S.G. § 2B1.1(b)(5), the

"more than minimal planning" provision, for the following reasons:

> I also believe that more than minimal planning was involved in this incident, the fact that the two thefts were, two incidents of thefts were separated by one week. The clandestine activity of the defendant in removing the food stamps, it shows—and it doesn't take much to be more than minimal planning.... More than minimal planning is very minimal, small degree of planning activity. And without any problem I conclude that he was involved in more than minimal planning. This was not a simply [sic] a snatching of whatever happened to be there. He picked out clearly the envelopes that had food stamps or that he thought would have food stamps.

(Sentencing Tr. 25).[1]

## II.

■ Whether a defendant obstructed justice or engaged in "more than minimal planning" are questions of fact we review for clear error. *United States v. McGill*, 32 F.3d 1138, 1143 (7th Cir.1994); *United States v. Abdelkoui*, 19 F.3d 1178, 1183 (7th Cir. 1994). Although we review the district court's interpretation of the Sentencing Guidelines de novo, *United States v. Haynes*, 969 F.2d 569, 571 (7th Cir.1992), we give due deference to its application of the Guidelines to the facts. *United States v. Kirkland*, 28 F.3d 49, 50 (7th Cir.1994).

### A. Obstruction of Justice

The Sentencing Guidelines provide for a two-level increase of the base offense level if the defendant willfully obstructs or impedes the administration of justice during the investigation, prosecution, or sentencing of the offense. U.S.S.G. § 3C1.1. The commentary specifically states that the enhancement applies where the defendant provides "materially false information to a judge or magistrate." *Id.* at comment. (n. 3(f)). "Material information" means information that, if believed, would tend to influence or affect the

issue under determination. *Id.* at comment. (n. 5.).

■ Harrison contends that his allegedly false statement was not material to the magistrate judge's decision to detain him because the State of Pennsylvania did not lodge a detainer against him for his parole violations. Yet, Harrison's parole status at the time he committed the instant offense is relevant notwithstanding Pennsylvania's failure to issue a detainer.[2] The purpose of the defendant's initial appearance before the magistrate judge is to determine whether the person charged with the offense, if released, will appear in court as required and that he will not endanger the safety of any other person or the community. 18 U.S.C. § 3142. Subsection (g)(3)(B) of the statute authorizes the magistrate judge to consider whether the person was on parole at the time of his arrest; indeed, the imposition of conditional release, a higher bond, or detention may be justified to ensure the parolee's appearance in court. Accordingly, Harrison's statement that he was not on parole at the time of this offense, if believed, would most likely affect the magistrate judge's determination. *United States v. Delgado*, 936 F.2d 303, 306 (7th Cir.1991) ("It is difficult to conceive of a more material falsehood than a defendant lying ... concerning the extent of his criminal record ... particularly ... when the defendant fails to appear for a violation of probation hearing, was subject to an outstanding arrest warrant for the failure and, thus, was an absconder from probation"), *cert. denied,* —— U.S. ——, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992). Whether the magistrate judge ultimately relied on Harrison's parole status in ordering his detention is not relevant to the application of the enhancement. *United States v. Thomas*, 11 F.3d 1392, 1400–01 (7th Cir.1993) (affirming obstruction enhancement where defendant provided false information in presentence investigation about prior arrest record even though district court did not rely upon prior arrest in imposing sentence); *United States v. Gaddy*,

---

1. Although Harrison also received a two-level increase for reckless endangerment during flight, U.S.S.G. § 3C1.2, he does not appeal this enhancement.

2. The Presentence Investigation Report ("PSI") indicates that a detainer was filed. *See* ¶¶ 55–56.

909 F.2d 196, 199 (7th Cir.1990) (because § 3C1.1 applies to attempts to obstruct justice as well as actual obstruction, court rejects defendant's claim that lie had no impact on investigation).

■ Harrison also urges us to vacate his sentence because he was not under oath when he made the false statement to Magistrate Judge Bittner. This argument has no textual basis in § 3C1.1. The commentary provides examples of the types of conduct that warrant application of the obstruction enhancement and included in this list is providing "materially false information to a judge or magistrate." U.S.S.G. § 3C1.1 comment. (n. 3(f)). In addition, the provision authorizes judges to punish other acts of deceit not committed under oath such as giving materially false information to law enforcement or probation officers. Unquestionably, the guideline is less concerned with whether the false information was given under oath than with the information's effect on a judicial decision or investigation.

■ Next, Harrison argues that he should not be held accountable for his false statement because he remained unrepresented at the hearing despite his request for an attorney. According to Harrison, an attorney would have advised him to remain silent. In *United States v. Ojo,* the defendant claimed she gave false information to the pretrial services officer as a result of her uncounseled decision to exercise her right against self-incrimination. 916 F.2d 388, 393 n. 9 (7th Cir.1990). This court noted that the defendant was fully aware of her right to remain silent and waived that right when she provided information. *Id.* More importantly, the court emphasized that silence rather than deception was the means through which an uncounseled defendant could exercise her right against self-incrimination. *Id.* Similarly, the magistrate judge informed Harrison at the beginning of the hearing that he had the right to remain silent pursuant to Federal Rule of Criminal Procedure 5, and that anything he said could be used against him. Harrison waived that right when he later asked to make a statement and then explained he was not on parole. We do not accept Harrison's proposition that he needed an attorney to inform him that he should not provide false information to a magistrate judge.

■ Finally, Harrison contends that he did not willfully mislead the magistrate judge because he sincerely believed that his parole term expired in January 1994. The district court did not find Harrison's explanation believable. *See United States v. Mafanya,* 24 F.3d 412, 415 (2d Cir.1994) (common sense suggests that the reason defendant sought to conceal his criminal record from magistrate judge was his hope of being released on bail). Credibility determinations will be given utmost deference on appeal. *United States v. Hatchett,* 31 F.3d 1411, 1418 (7th Cir.1994). Indeed, Harrison subsequently undermined his credibility by admitting that he left Pennsylvania without notifying his parole officer and that he knew a parole revocation hearing was to be scheduled. Hence, we do not find the district court's finding that Harrison willfully deceived the magistrate judge to be clearly erroneous and affirm the obstruction enhancement to his sentence.

*B. "More than Minimal Planning" under § 2B1.1(b)(5)*

Harrison also disputes that he engaged in "more than minimal planning" by stealing food stamps on two occasions within one week. Furthermore, he alleges that the district court erroneously believed that "more than minimal planning" exists whenever there is more than no planning.

■ A sentence may be enhanced under U.S.S.G. § 2B1.1(b)(5) where (1) there is more planning than is typical for commission of the offense in a simple form; (2) steps are taken to conceal the offense; or (3) criminal acts, each of which are not purely opportune, are repeated over a period of time. U.S.S.G. § 1B1.1, comment. (n. 1(f)). The commentary to the Sentencing Guidelines offers specific examples of the types of conduct to which the enhancement is applicable:

> In an assault, for example, waiting to commit the offense when no witnesses were present would not alone constitute more than minimal planning. By contrast, luring the victim to a specific location, or

wearing a ski mask to prevent identification, would constitute more than minimal planning.

In a commercial burglary, for example, checking the area to make sure no witnesses were present would not alone constitute more than minimal planning. By contrast, obtaining building plans to plot a particular course of entry, or disabling an alarm system, would constitute more than minimal planning.

In a theft, going to a secluded area of a store to conceal the stolen item in one's pocket would not alone constitute more than minimal planning.... Fashioning a special device to conceal the property, or obtaining information on delivery dates so that an especially valuable item could be obtained, would constitute more than minimal planning.

U.S.S.G. § 1B1.1, comment. (n. 1(f)).

■ The district court applied the enhancement on the basis of Harrison's extraction of only the food stamp envelopes from the cart and the desk, the two acts of theft, and the clandestine activity surrounding the removal of food stamps. Although the parties dispute whether Harrison committed repeated acts justifying the enhancement, we need not resolve the issue because we find the first ground, more than typical planning, sufficient to affirm Harrison's sentence.

■ First, however, a brief comment is warranted concerning the district court's reliance on Harrison's steps to conceal the crime. Although there is no doubt that Harrison walked surreptitiously into the office and later the custodial closet to remove the food stamps from the envelopes, as custodian he could access both places without causing suspicion. Arguably, he was no more secretive than the thief in the Guideline example who goes to a secluded area of a store to conceal the stolen item in his pocket. U.S.S.G. § 1B1.1, comment. (n. 1(f)). But Harrison was more than a shoplifter who thought no one was looking. He had legal access to a restricted area. He knew by his experience exactly which envelopes held food stamps and where they were kept. He knew where to go to remove the stamps without being seen or challenged. Even so, such

conduct alone would not necessarily justify the enhancement. A thief who does nothing extraordinary to deflect suspicion or hide his crime does not warrant a sentence increase for "more than minimal planning." *United States v. Maciaga,* 965 F.2d 404, 407 (7th Cir.1992).

In *Maciaga,* a bank security guard hid bags of money stolen from the bank's night depository in his car; he later destroyed the bags and the customer deposit tickets and told others that the depository had been malfunctioning. We held that these facts did not amount to "more than minimal planning" since any thief might destroy the evidence of the theft or attempt to deflect suspicion away from him. These were simple steps to hide the crime. Here, Harrison did attempt to conceal the crime by going into the office and custodial closet to open the letters, but he did not make a meaningful effort to destroy the empty food stamp envelopes. Instead he left them in the post office trash. Accordingly, there was probably insufficient evidence to support the enhancement based solely upon Harrison's steps to conceal the theft.

Nonetheless, the enhancement is justifiable because there is evidence to indicate that there was more planning involved than is typical for the commission of the offense in a simple form. *United States v. Bean,* 18 F.3d 1367, 1370 (7th Cir.1994). Although at sentencing the district court may have inadvertently suggested that the defendant need only engage in a very "small degree of planning activity" to receive an enhanced sentence, it is clear from the facts of this case that Harrison engaged in a fair amount of information-gathering before executing the thefts. Harrison was a custodian, not a postal worker. Thus, the performance of his duties would not have required him to learn where the food stamp envelopes were kept. Yet, he entered the post office on two occasions and headed directly for the stamps. Indeed, the second time, he recovered food stamp envelopes from a desk near the cart. This conduct indicates that Harrison took the time prior to the thefts to discover where such items were kept. As the district court noted, these acts were not simply a "snatching of whatever happened to be there." Be-

cause of Harrison's knowledge acquired outside his normal work duties, he was able to pick out quickly the mail items of value to him. In other words, he knew exactly where to go to get exactly what he wanted.

Harrison's actions are analogous to the thief who obtains information on delivery dates so that he can steal an especially valuable item. U.S.S.G. § 1B1.1, comment. (n. 1(f)); *see also United States v. Barndt,* 913 F.2d 201, 204–05 (5th Cir.1990) (defendant learned prior to theft of copper wire that telephone cables from which he took wire was not in service). He formed an intent to commit the crime in advance. He took steps in furtherance of his plan before he actually took the mail. Such behavior constitutes "more than minimal planning" under the Guidelines and we therefore defer to the district court's decision to enhance Harrison's sentence.

### III.

Harrison's sentence is

AFFIRMED.