59 F.3d 173
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Hubbard L. WALKER, Plaintiff-Appellant,
v.
STATE OF INDIANA, Indiana State Police Department, Indiana
State Police Board, et al., Defendants-Appellees.
 No. 94-2962.
 United States Court of Appeals, Seventh Circuit.
 Argued April 17, 1995.
Decided June 20, 1995.
Rehearing and Suggestion for Rehearing
En Banc Denied
 July 18, 1995.
 
 Before CUMMINGS, COFFEY and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff Hubbard L. Walker filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Indiana Civil Rights Commission. In October 1986, the EEOC issued Walker a notice of right to sue, and he subsequently brought this action against the State of Indiana, the Indiana State Police Department and the Indiana State Police Board claiming that defendants discriminated against him on account of his race in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. Sec. 2000e et seq.). The case was tried before Magistrate Judge Endsley, who filed his report recommending judgment against plaintiff in April 1993. In July 1994 District Judge McKinney's entry upheld the magistrate judge's determination that the plaintiff had proven neither a direct evidence case of discrimination nor a disparate impact case. Consequently the district court entered judgment for defendants, resulting in this appeal. We affirm.
 
 Facts
 
 2
 In 1976 the Indiana State Police Academy, following a selection process that had been mandated by a consent decree entered in Bailey v. DeBard,[1] reserved 40% of the seats in each State Police Academy class for black applicants. Because of the consent decree, the State Police used two separate lists for considering applicants, one for blacks and one for all other persons applying for hire. For the 31st Academy class attended by Walker, 20 black persons were selected out of 141 black applicants while 30 persons were selected from 1,103 non-black applicants.
 
 
 3
 Plaintiff graduated last in his class from the 31st Academy in June 1976, although he had some trouble completing certain courses. Thereafter plaintiff went through a period of "on the job" training at the Evansville, Indiana, Post of the State Police for several months. He was the first black officer assigned to that Post.
 
 
 4
 Officers evaluating Walker during his training period consistently marked him down with respect to conduct and report writing. An officer evaluating plaintiff in 1976 marked him as needing improvement in conduct, judgment, discipline, initiative, knowledge of patrol area or assignment, knowledge of laws, rules and regulations, policies and procedures, public relations, ability to make reports, work attitude, operation and care of Department equipment and preparation and presentation of court cases. The evaluating officer reported that Walker used his police badge to gain entry into night clubs while off duty. The evaluation particularly noted that plaintiff's reports were inaccurate, incomplete and sometimes not understandable.
 
 
 5
 Evaluations conducted in 1977 continued to state that plaintiff needed improvement in certain areas including judgment and errors in reports, and that plaintiff needed counseling about his job performance.
 
 
 6
 In addition to critical evaluations, plaintiff also received a one-day suspension in October 1976 following a verbal altercation with a waitress in a local restaurant. In July 1977, another officer reported receiving complaints about plaintiff's allegedly harassing behavior from a hotel manager.
 
 
 7
 At the end of Walker's probationary year, the police superintendent ordered Walker's probationary period extended for an additional 90 days. Subsequently, after Walker refused to attend a meeting that had been arranged to discuss his ongoing problems, he was terminated from the force.
 
 Analysis
 
 8
 Walker complained that the negative evaluations were based on racial stereotypes about the relative competence of white versus black officers and were evidence of discrimination. The magistrate judge heard testimony from a number of police officers who testified that plaintiff had been treated fairly, that the atmosphere at the Post was not racially hostile, and that the evaluations and reports about plaintiff were based strictly upon his actual performance or conduct and not upon his race. A witness with experience in racial relations also disputed Walker's contention that the language used in his evaluations reflected racial stereotyping or racial prejudice.
 
 
 9
 After hearing this testimony, along with Walker's, the magistrate judge found the defense witnesses more credible than plaintiff, and concluded that the evaluation reports were based upon plaintiff's actual performance and did not reflect racial prejudice or stereotypes. These credibility determinations and factual determinations are entitled to special deference. United States v. Harrison, 42 F.3d 427, 431 (7th Cir. 1995); United States v. Linnear, 40 F.3d 215, 220 (7th Cir. 1994). There is no reason to substitute plaintiff's self-serving view of the evaluations and other evidence for those accepted as credible by the magistrate judge.
 
 
 10
 The magistrate judge also rejected plaintiff's disparate treatment claims on the basis that Walker had offered insufficient evidence in support of it. Again, the magistrate had the opportunity to hear testimony relating to defendants' intent and resolved credibility questions in their favor and against Walker. His conclusions are not clearly erroneous nor subject to reversal. Finally, the magistrate judge concluded that Walker's statistical evidence of disparate impact was properly rejected because it ignored the practical realities of the consent decree.
 
 
 11
 Affirmed.
 
 
 
 [1]
 U.S. District Court, No. 1P74-458C (Exhibit 12a)