97 F.3d 1463
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Otis WILLIAMS, Defendant-Appellant.
 No. 95-10340.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 10, 1996.
Decided Sept. 5, 1996.
 
 1
 Before: REINHARDT and HALL, Circuit Judges, and MERHIGE, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant, Otis Williams ("Williams"), appeals his conviction and sentence on one count of theft by a postal employee in violation of 18 U.S.C. § 1709, one count of false statements in violation of 18 U.S.C. § 1001, and two counts of unlawful acquisition of food stamps in violation of 7 U.S.C. § 2024(b)(1). We AFFIRM the convictions but REMAND for resentencing.
 
 I.
 
 4
 On November 5, 1994, Williams, a United States Postal Service (USPS) letter carrier, attempted to deliver approximately $115.00 in food stamps to Linda French ("French") at an apartment complex in Peoria, Arizona. French was not at home, and her friends refused to sign for and accept the food coupons. After leaving the apartment, Williams forged French's signature on the USPS delivery receipt notice, took the food stamp coupons, and then filed a forged delivery receipt notice with the Postal Service. Subsequently, French's November 5th food stamp packet was reported missing and replaced. While the delivery slip was signed "Linda French," a postal inspection handwriting expert testified at trial that the handwriting was that of Williams. Williams testified that after encountering the first group of neighbors, he met a red-headed woman who signed for the stamps and agreed to accept delivery. He maintained that he never signed the receipt.
 
 
 5
 Based upon the November 5th incident, postal inspectors placed a USPS control letter, containing food coupons, in the mail sort trays for Williams' delivery route. The letter contained a transmitting device encased within the coupon booklet.
 
 
 6
 Postal inspectors located within the station observed Williams discover the control letter and watched him handle and segregate the letter from the other mail. Williams then began his route, while three inspectors monitored Williams and the control letter. After some time, Williams deviated from his established route and drove behind a large apartment complex. A few minutes later, the control letter was opened, causing the transmitting device to activate. After the control letter was opened, Williams returned to his scheduled delivery location. Postal inspectors approached his vehicle and immediately located the opened control letter in a delivery tray next to the steering wheel. At trial, Williams claimed that an unidentified woman had given him the letter in that condition during the morning and denied ever opening the letter.
 
 
 7
 On November 18, 1994, a one-count complaint was filed against Williams charging him with theft of mail by a postal employee in violation of 18 U.S.C. § 1709. Subsequently, a five count indictment was returned by the grand jury, charging Williams with two counts of theft by a postal employee in violation of 18 U.S.C. § 1709 (counts 1 and 2), one count of false statements in violation of 18 U.S.C. § 1001 (count 3), and two counts of unlawful acquisition of food coupons in violation of 7 U.S.C. § 2024(b)(1) (counts 4 and 5).
 
 
 8
 Count One was dismissed without prejudice on April 19, 1995. Williams then moved to dismiss Counts 4 and 5 for lack of subject matter jurisdiction. The district court denied the motion. Williams also submitted a requested jury instruction with respect to Counts 4 and 5. The district court refused to give the instruction and gave its own over Williams' objection.
 
 
 9
 Prior to trial, Williams notified the district court that he intended to call witnesses to testify about discrimination at the post office where he worked. The district court excluded the evidence under Fed.R.Evid. 403. Defendant made an offer of proof, and the district court reaffirmed its ruling excluding the testimony.
 
 
 10
 At trial, Williams moved for judgment of acquittal on counts 4 and 5 at the close of the government's case. The court denied the motion. The motion was renewed and denied at the close of all the evidence. On April 28, 1995, the jury found Williams guilty on all four counts.
 
 
 11
 Defendant's sentencing hearing was held on July 17, 1995, and a corrected judgment and sentence was ordered on July 25, 1995. As part of Williams' sentence, the court included a two point enhancement for "more than minimal planning" pursuant to U.S.S.G. § 2B1.1(b)(4)(A). The court sentenced Williams to 16 months of imprisonment followed by 36 months of supervised release as to each count, running concurrently; a special assessment of $200; a $1,000 fine; and restitution in the amount of $115. A timely notice of appeal was filed on July 20, 1995.
 
 II.
 
 12
 Prior to its amendment in 1990, 7 U.S.C. § 2024(b) provided in pertinent part:
 
 
 13
 [W]hoever knowingly ... acquires ... or possesses coupons ... in any manner not authorized by this chapter [Chapter 51, Title 7, United States Code] or the regulations issued pursuant to this chapter shall [be guilty of an offense].
 
 
 14
 7 U.S.C.A. § 2024(b) (1988) (emphasis added). After its amendment, the Act provided in pertinent part:
 
 
 15
 [W]hoever knowingly ... acquires ... or possesses coupons ... in any manner contrary to this chapter [Chapter 51, Title 7, United States Code] or the regulations issued pursuant to this chapter shall [be guilty of an offense].
 
 
 16
 7 U.S.C.A. § 2024(b) (1995 Supp.) (emphasis added).
 
 
 17
 Counts 4 and 5 of the indictment ignored the language of the 1990 amendment and alleged Williams took food stamps "in a manner not authorized by Chapter 51, Title 7, United States Code, or by regulations issued pursuant thereto...." (emphasis added). Williams argues that he was charged under a statute that was no longer in existence, and therefore, (1) the indictment as to Counts 4 and 5 was insufficient under Federal Rule of Criminal Procedure 7(c); (2) his Fifth Amendment right to a grand jury indictment on Counts 4 and 5 was violated; (3) if the statute is held to have identical meaning both before and after the amendment, the statute is unconstitutionally vague; (4) the convictions on Counts 4 and 5 must be vacated because the government failed to prove beyond a reasonable doubt each element of the offense; and (5) the district court erred by relieving the government of the burden of proving an element by instructing the jury that an essential element of Counts 4 and 5 was presumed.
 
 
 18
 Williams claims that the new language of § 2024(b) narrowed the range of conduct indictable under Chapter 51, Title 7 (the "Act"), arguing that the prior version punished any manner of acquiring or possessing food stamps unless specifically allowed by the Act, while the new version of § 2024(b) only punishes conduct which is specifically prohibited by the terms of the Act. Essentially, Williams argues that the government must now point to a portion of the Act that specifically prohibits mail carriers from stealing food coupons. We reject Williams' statutory arguments.
 
 
 19
 First, while Williams wants the Court to view the plain meaning of the amended statute, he ignores its context with the rest of the Act. To accept his reasoning, the Act would need to include a detailed list of every imaginable way to illegally acquire food stamps. Understandably, nowhere in the Act does such a list exist; rather, the Act outlines the appropriate ways for individuals to participate in the food stamp program. Therefore, § 2024(b), in both its previous form outlawing the acquisition of food stamps in a manner "not authorized" by the Chapter, and in the amended version outlawing the acquisition of food stamps in a manner "contrary" to this Chapter, attains the same result. Acquisition of stamps "contrary" to the rules has the same effect of prohibiting the acquisition "in any manner not authorized" by the rules. If Congress had intended to add a new element to § 2024(b)(1), there certainly would have been language to that effect in its legislative history. We reject Williams' contention and find that the language change in § 2024(b)(1) is non-substantive.
 
 
 20
 (a) Sufficiency of Indictment and Right to a Grand Jury
 
 
 21
 This Court reviews the sufficiency of an indictment de novo. United States v. Alber, 56 F.3d 1106, 1111 (9th Cir.1995). The interpretation of a statute is also reviewed de novo. United States v. Ripinsky, 20 F.3d 359, 361 (9th Cir.1994).
 
 
 22
 Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment be a "plain, concise and definite written statement of the essential facts constituting the offense charged." An indictment must contain only the facts and elements of the offense charged necessary to inform the accused of the charges against him or her so that he or she can prepare a defense and invoke the double jeopardy clause in a later proceeding for the same offense. Hamling v. United States, 418 U.S. 87, 117 (1974); Russell v. United States, 369 U.S. 749, 763-64 (1962); United States v. Martin, 783 F.2d 1449, 1452 (9th Cir.1986).[1] Individuals have a Fifth Amendment right to have a grand jury "independently" evaluate their alleged conduct and determine whether probable cause exists for the alleged offenses. See Russell, 369 U.S. at 771. One of the functions of an indictment is to protect a criminal defendant's right not to be prosecuted except on offenses passed on by a grand jury. Id.
 
 
 23
 Williams alleges that he was tried and convicted on offenses that were not accurately identified in the indictment or properly presented to the grand jury. Having rejected Williams' interpretation of the revised statute, however, it follows that the grand jury's assessment of whether the alleged conduct was not "authorized" by the Act is the same as determining that the conduct was "contrary" to the Act, and that Williams was clearly aware of the charges against him in the indictment. Therefore, we reject Williams' claim that the indictment was fatally defective under Rule 7(c) or that his Fifth Amendment right to have a grand jury evaluate his alleged conduct was violated.
 
 
 24
 (b) Is the Amended Statute Unconstitutionally Vague
 
 
 25
 Challenges to a statute's constitutionality are reviewed de novo. United States v. Harding, 971 F.2d 410, 412 (9th Cir.1992), cert. denied, 506 U.S. 1070 (1993). A statute is void for vagueness when a person of average intelligence cannot reasonably understand what is prohibited. United States v. Bohonus, 628 F.2d 1167, 1174 (9th Cir.), cert. denied, 447 U.S. 928 (1980).
 
 
 26
 The regulations under the Act provide a detailed description of the authorized means of acquiring food stamps. When taken together with the language stating that whoever knowingly acquires coupons in "any manner contrary to" Chapter 51 or the regulations shall be guilty, the statute and regulations provided adequate notice to Williams. Furthermore, Williams testified at trial that he knows stealing is an unlawful way of acquiring anything, and more specifically, that stealing food stamps from the mail is an unlawful way of acquiring food stamps. As the Supreme Court stated in Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982), in cases such as this one "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Clearly, Williams was aware that stealing coupons from the mail was illegal, and therefore, we reject his void for vagueness challenge.
 
 
 27
 (c) Guilt Beyond a Reasonable Doubt?
 
 
 28
 At the close of the government's case, Williams moved for a judgment of acquittal on Counts 4 and 5, which the district court denied. Williams claims that the district court erred because the jury heard no evidence that the alleged thefts violated any provision of the Act or any pertinent regulation. We review the denial of a motion for acquittal by reviewing the evidence presented against the defendant in a light most favorable to the government to determine whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Riggins, 40 F.3d 1055, 1057 (9th Cir.1994) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 29
 Williams claims that the government failed to prove each essential element of the offense charged beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970). He argues that the government was required to show every portion of the Act that his actions were "contrary to." Section 2024(b), however, does not require the government to point to every provision of the Act that was violated; rather, all the government must do, as it did, is prove that Williams committed the wrongful act with the requisite intent. No more is necessary. Therefore, we affirm the district court's denial of Williams' motion for acquittal.
 
 
 30
 (d) Whether the court gave an improper jury instruction?
 
 
 31
 As to the § 2024(b) counts, the district court gave the following instruction in pertinent part:
 
 
 32
 You are instructed that acquiring or possessing food coupons by embezzling or stealing them from the United States Mails as a mail carrier is contrary to the provisions of Chapter 51, Title 7 of the United States Code and regulations pursuant thereto.
 
 
 33
 Williams contends the district court erred by instructing the jury as a matter of law that theft was contrary to those provisions. We also reject this argument.
 
 
 34
 We review the formulation of jury instructions for an abuse of discretion but consider whether an instruction misstates the elements of the crime de novo. United States v. Vaandering, 50 F.3d 696, 702 (9th Cir.1995). The jury in this case was properly asked to determine whether the evidence proved Williams improperly took the food stamps in the two alleged instances. It was also properly told that in order to convict, it must find the evidence showed that "the defendant knew his conduct was unlawful or illegal." By instructing the jury that stealing food stamps is contrary to the Act and its regulations, the judge was simply advising it of an obvious principle of law. Therefore, we find no legal error or abuse of discretion in the judge's instructions to the jury.
 
 III.
 
 35
 Prior to beginning his case, Williams notified the court that he intended to call witnesses to testify about alleged discrimination against him at the post office. The district court excluded the evidence under Rule 403, and Williams made an offer of proof. We review a district court's exclusion of evidence under Rule 403 for an abuse of discretion. United States v. Spencer, 1 F.3d 742, 744 (9th Cir.1992).
 
 
 36
 In his offer of proof, Williams called Robert Nelms, a USPS letter carrier and union steward who had worked with Williams since 1986, and David Harris, a union representative and officer who represented Williams in various instances where he allegedly received unfair treatment on the job. These two individuals testified to alleged instances where Williams was treated unfairly by his supervisors. We find that this proffered testimony was of no relevance to the issues at trial, and therefore, find no abuse of discretion in the exclusion of this evidence by the district court.
 
 IV.
 
 37
 We will affirm a district court's enhancement for "more than minimal planning" unless the district court's finding is clearly erroneous. United States v. Lindholm, 24 F.3d 1078, 1086 (9th Cir.1994). U.S.S.G. § 2B1.1(b)(4)(A) provides for a two point increase in the offense level for "more than minimal planning." Williams' pre-sentence report did not assess this increase, but after objection by the government, the district court increased Williams' offense level two points for "more than minimal planning."[1]
 
 
 38
 Because the Sentencing Guidelines identify three distinct categories justifying the enhancement, where (1) there is more planning than is typical for commission of the offense in a simple form; or (2) significant affirmative steps are taken to conceal the offense; or (3) criminal acts, each of which are not purely opportune, are repeated over a period of time. U.S.S.G. § 1B1.1, comment. "Application Note 1(f)." We address each category separately.
 
 A. More Planning than Typical
 
 39
 In order to enhance a sentence under § 2B1.1(b)(4)(A), there must be more planning than is typical of the commission of the offense in a "simple" form, not in its "simplest" form. Williams maintains that there is no evidence that the two forgeries were ever planned. In fact, Williams points out that he clearly attempted to deliver the first letter to French, and the second theft was the result of a sting operation planned by the government. Furthermore, Williams argues that French's signature was so obviously forged, that no effort to disguise his handwriting was ever planned.
 
 
 40
 In United States v. Harrison, 42 F.3d 427 (7th Cir.1994), a custodian at a post office was convicted of two incidents of stealing food stamps. The Seventh Circuit affirmed the "more than minimal planning" increase. Id. at 432. The Court explained that there was more planning involved than is typical for the commission of the offense in a simple form. Id. The Court reached this conclusion, however, after recognizing that the defendant was a custodian, not a postal worker, and therefore, he must have taken the time before the thefts to discover where such items were kept. Id. The Court analogized the defendant's thefts to a thief who obtains information on delivery dates so that he can steal an especially valuable item. Id. at 433.
 
 
 41
 Williams' actions show far less premeditation than most cases in which the enhancement has been applied. See, e.g., United States v. Deeb, 944 F.2d 545 (9th Cir.1991), cert. denied, 503 U.S. 975 (1992) (complicated embezzlement involving three co-conspirators and two separate bank accounts). Williams was a postal worker who stole two letters that came to his attention during his normal working duties. There is little evidence of any planning on his part, and these actions do not demonstrate that Williams' planning to steal the food stamps was atypical. Furthermore, the stories Williams created when confronted with his crimes were not especially creative or complex to indicate they were planned in advance.
 
 B. Attempts to Conceal
 
 42
 Williams created two stories in order to conceal his crime from postal inspectors. He also drove behind a secluded area while opening the control letter. The district court ruled that these were "significant affirmative steps" to conceal the offense.
 
 
 43
 In United States v. Maciaga, 965 F.2d 404 (7th Cir.1992), a bank security guard hid bags of stolen money from the night depository in his car. He later destroyed the bags, threw away the customer deposit tickets and told others that the depository had been malfunctioning. The Seventh Circuit held that this was not more than minimal planning since the defendant "did no more than take the 'logical' step of discouraging an investigation. Id. at 408. The Court analogized the defendant's actions to an embezzler who hides his taking with a single false book entry, which is nothing more than a "simple step to hide his crime." Id.
 
 
 44
 It is logical that in order to avoid an investigation, Williams would tell investigators that someone else signed for the food stamps or go to a secluded area to open them. As the comments to the Sentencing Guidelines explain:
 
 
 45
 In a theft, going to a secluded area of a store to conceal the stolen item in one's pocket would not alone constitute more than minimal planning.
 
 
 46
 Guidelines § 1B1.1, Application Note 1(f). Williams took simple steps to hide his crime that are not the kind of active concealment contemplated by the Sentencing Guidelines.
 
 C. Repeated Acts
 
 47
 Williams did not commit "repeated acts over a period of time." Courts have held that two instances do not constitute "repeated acts," United States v. Bridges, 50 F.3d 789, 792-93 (10th Cir.1994) and that at least three acts are necessary for "minimal planning." United States v. Kim, 23 F.3d 513, 515 (D.C.Cir.1994). Most cases that have enhanced sentences under this section involve numerous instances of criminal activity over a prolonged period of time. As the Guidelines explain:
 
 
 48
 "more than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune.
 
 
 49
 See Guidelines § 1B1.1, Application Note 1(f).
 
 
 50
 We find that the "more than minimal planning" enhancement should not have been applied in this case. Williams committed two criminal acts, both of which were arguably unplanned on his part. He was able to commit the crimes while conducting his normal working duties, and there was no more planning or concealment on his part than is typical for the commission of the offense in a simple form. Furthermore, he was only involved in two acts of theft, one of which was facilitated by a government sting. Therefore, Williams' crimes were "purely opportune," and not the actions contemplated by the drafters of the Sentencing Guidelines. Accordingly, we find clear error in the district court's two point enhancement for "more than minimal planning."
 
 V.
 
 51
 We AFFIRM Williams' convictions on all counts. However, we REMAND solely for resentencing in accordance with this disposition.
 
 
 52
 Affirmed in part; Vacated and Remanded in part. The mandate shall issue immediately and no petition for rehearing will be entertained.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not suitable for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In Schmuck v. United States, 489 U.S. 705 (1988), Martin was disapproved on other grounds
 
 
 [1]
 The district court ruled:
 "Mr. Williams was found by the jury to have forged the signature on the first incident, had developed a theme ..., so that when confronted at his workplace ... he had the story in hand.
 When he is presented with circumstances where there is a trap letter, a suspect letter, ... he doesn't place it where it should be, takes it out of the building with him, goes through this route activity, has a story fabricated available for what happened.
 It would appear that giving a reasonable construction of the guideline that these events all just didn't happen without some planning on Mr. Williams' part as the situations presented themselves to him....
 Driving by the building, going around the building, opening the envelope, coming back, were certainly significant insofar as the events are concerned and, at the least demonstrates the thought that he was going to examine the envelope at a place where he would not be otherwise visible.
 These acts occurred over a period of time, in November, and suggest that Mr. Williams was not a stranger to this process.
 So I find that there is, by clear and convincing evidence and reasonable inferences from the evidence, that an adjustment to his base offense level for more than minimal planning is appropriate...."