**UNITED STATES of America, Appellee,**

**v.**

**Charles Robert MANNING, a/k/a John Doe, Defendant, Appellant.**

**No. 91–1545.**

United States Court of Appeals, First Circuit.

Heard Dec. 4, 1991.

Decided Jan. 29, 1992.

Edward S. MacColl with whom Cynthia A. Dill and Thompson, McNaboe, Ashley & Bull, Portland, Me., were on brief for defendant, appellant.

F. Mark Terison, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., Portland, Me., was on brief for appellee.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Defendant, Charles R. Manning, a/k/a John Doe, was convicted in the District Court for the District of Maine on three counts for making false statements to the Internal Revenue Service (IRS) and the Immigration & Naturalization Service (INS), in violation of 18 U.S.C. § 1001, and for falsely representing his Social Security Number (SSN) to White Rock Distilleries, Inc. and the City of Lewiston, Maine, in violation of 42 U.S.C. § 408(g)(2). The district court sentenced Manning to a sixteen month term of imprisonment and a three year term of supervised release. In addition, the court imposed a felony assessment of $50 for each count, for a total of $150. Manning appeals from his conviction and sentence on two principal grounds: (1) that the evidence was insufficient to allow the jury to find beyond a reasonable doubt that he knowingly and fraudulently misstated his social security number and (2) that the district court erred in making a two-level adjustment to Manning's sentence for obstruction of justice.[1] We affirm Manning's conviction. We hold, however, that the district court acted contrary to sentencing guideline provisions when it enhanced Manning's sentence for obstruction of justice. We, accordingly, vacate his sentence and remand for resentencing.

## I. BACKGROUND

In November, 1989 Manning applied successfully for a job with White Rock Distilleries, Inc., (White Rock), located in Lewiston, Maine, using the name and date of birth of Christopher James Stevens—a man who had died in Utah in 1986—and using a false, invalid, SSN. Among the forms Manning completed for the job were an INS form I-9 and an IRS form W-4. Manning's employment with White Rock was terminated in April, 1990.

In May, 1990, Manning applied for and obtained welfare benefits from the City of Lewiston. In his application, Manning again used the alias Christopher Stevens and submitted another false SSN. This time the false SSN was an existing number assigned to one Donna Lee Moore. Manning also used Christopher Stevens' actual

---

birth date and Stevens' father's name and address on the required forms. The general assistance administrator for the City of Lewiston discovered the discrepancy in Manning's SSN and asked him for a correction. Manning supplied the administrator with another slightly different SSN—the same one he had used as an employee with White Rock. Because of the continuing discrepancy, the general assistance administrator informed Manning that he had to straighten out the problem with his SSN before he could obtain further welfare benefits.

Manning then applied to the Social Security Administration for a replacement social security card. In the application, he used his correct birth name—Charles Manning—his correct date and place of birth and his own parents' names, but he again misstated his SSN. The application also misstated the zip code to his New Hampshire Post Office Box.

Manning was arrested in Lewiston, Maine on August 8, 1990 pursuant to an investigation commenced after reports of the discrepancies in his SSNs. He was driving a car with New Hampshire registration plates at the time. In identifying himself to the arresting officers, Manning used his alias—Christopher Stevens. He also used Stevens' birth date and parents' names in responding to questions. At the time of his arrest, Manning had in his possession a State of Maine vehicle registration describing Manning's car except for the license plate, a certificate of title from the State of New Hampshire, a birth certificate, a metal social security card showing the invalid SSN used at White Rock, a military discharge document, a New Hampshire driver's license, a Hampton, New Hampshire post office box receipt, an automatic teller machine bank card, and a medical insurance card, all in the name of Christopher J. Stevens.

Authorities searched Manning's apartment, located in Lewiston, on August 9, 1990 pursuant to a search warrant. The search produced numerous documents and identification papers in the names of Christopher Stevens, Chris Kelley and Charles Manning. Among the documents found were: three driver's licenses—one from Washington State, one from Utah, and on the third the state was illegible—in the name of Charles Robert Manning, each bearing Manning's photograph; an honorable discharge document from the United States Air Force in the name of Charles Robert Manning, and a reverse negative of the same; a United States Air Force discharge document in the name of Christopher J. Stevens; a signed social security card in the name of Charles R. Manning and bearing Manning's correct SSN; and a birth certificate from Brockton, Massachusetts for Charles Robert Manning. Authorities also found: five copies of altered birth certificates in the names of Christopher Lawrence Kelley, Charles Robert Manning, Christopher James Stevens, each bearing different dates of birth; documents with entries "whited out" or altered by taping different names or dates over the entries; and pieces of typewriter paper with numerous names, dates and addresses repeatedly typed on them.

Upon further investigation, authorities determined Manning's true identity and discovered that two bench warrants for Manning's arrest were outstanding in Salt Lake City, Utah for Manning's alleged default on his probation pursuant to a prior conviction for attempted forgery.

## II. DISCUSSION

Manning argues, first, that his conviction should be reversed because the evidence was insufficient for the jury to find beyond a reasonable doubt that he misstated his name and SSN with an "intent to deceive." According to Manning, no credible evidence was presented sufficient to allow a jury to find beyond a reasonable doubt that he actually knew his SSN. Indeed, he contends that his ignorance of his SSN was demonstrated when he misstated the number upon filing for a replacement card with the Social Security Administration. It is inconceivable, Manning says, that he would have intentionally misstated his SSN on such a document. He contends that this fact alone should, as a matter of law, give

rise to a reasonable doubt as to whether he knew his SSN. Moreover, Manning argues that a jury finding based on the conclusion that he used a false name with an "intent to deceive" was tainted by the district court's failure to instruct that a person has a common law right to change his name without recourse to legal proceeding. We find no merit in these arguments.

■ In reviewing a challenge to the sufficiency of the evidence, this court views the evidence as a whole in the light most favorable to the government to determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Arango–Echeberry*, 927 F.2d 35, 37 (1st Cir.1991); *United States v. Batista–Polanco*, 927 F.2d 14, 17 (1st Cir.1991). To establish that Manning had violated 18 U.S.C. § 1001, the government needed to prove that Manning (a) made a false statement (b) about a material fact (c) within the jurisdiction of any department or agency of the United States (d) with fraudulent intent. 18 U.S.C. § 1001; *see also United States v. Corsino*, 812 F.2d 26, 29 (1st Cir.1987). To establish that Manning violated 42 U.S.C. § 408(g)(2), the government needed to prove that Manning used a false social security number or one which was not assigned to him, for any purpose, with the intent to deceive. 42 U.S.C. § 408(g)(2); *see also United States v. Doe*, 878 F.2d 1546, 1553 (1st Cir.1989). Manning only alleges insufficient evidence to establish the intent elements of these offenses.

■ We find ample evidence from which a jury could conclude that Manning used false SSNs and a false name with the intent to deceive. As detailed above, upon searching Manning's apartment authorities found numerous documents and identification papers in the names of Christopher Stevens, Chris Kelley and Charles Manning. They also found five altered birth certificates and Manning's own Social Security Card with his correct SSN. In addition, there were two outstanding Utah bench warrants for Manning's arrest. From this, it could reasonably be inferred beyond a reasonable doubt that when Man-

ning misrepresented his SSN and used the name of Christopher Stevens, he did so deliberately in order to conceal his identity from authorities and to deceive them as to his identity. Evidence "need not exclude every reasonable hypothesis of innocence" and the jury is free to "decide among reasonable alternatives." *Batista–Polanco*, 927 F.2d at 17; *United States v. Laboy*, 909 F.2d 581, 588 (1st Cir.1990). The evidence was ample to convict here.

Similarly, we do not find reversible error in the court's instructions to the jury regarding a person's right to change his or her name. Manning had asked the court to instruct the jury that "a person may change his name without recourse to legal proceedings so long as he does not do so for fraudulent purposes." The district court instructed the jury as follows:

> Ladies and gentleman of the jury, one additional thing. There has been a great deal of talk in this case, in the evidence, and counsel in summation, about one changing one's name and how one goes about doing that. I instruct you that is not in this case. I instruct you that a person has a given name and that they are expected to use that name unless there is some step taken to lawfully change the name, although there is nothing to prohibit the use of another name as long as they do not do it for a fraudulent or deceitful or dishonest or illegal purpose.

Manning contends this instruction was error because it resolved two factual questions which were for the jury: namely, whether "Charles Manning" was now "Christopher Stevens" and what the government forms meant when they asked for a "name" without further explanation. We disagree.

First, the instructions given by the court conveyed the gist of Manning's request by stating that "there is nothing to prohibit the use of another name as long as they do not do it for a fraudulent or deceitful or dishonest or illegal purpose." *See United States v. McGill*, 953 F.2d 10, 13 (1st Cir. 1992) ("a defendant has no right to put words in the judge's mouth. So long as the

charge sufficiently conveys the defendant's theory, it need not parrot the exact language that the defendant prefers") (citations omitted). Second, the issue of name change was largely extraneous, given the overwhelming evidence that Manning was using false SSNs with the intent to deceive. Recognizing this, the court told the jury that the relevant question was whether the defendant did "the things that are described in any of the three remaining counts of the indictment. You will not be concerned with whether he was posing as someone else or not." We find no occasion to reverse, and we affirm Manning's conviction on all three counts. .

■ Manning's second claim on appeal is that the district court erred in applying a two-level enhancement to his sentence for the obstruction of justice, pursuant to U.S.S.G. § 3C1.1.[2] We review *de novo* whether Manning's conduct was encompassed within the scope of U.S.S.G. § 3C1.1. *See United States v. Bell*, 953 F.2d 6, 7 (1st Cir.1992); *United States v. Moreno*, 947 F.2d 7, 10 (1st Cir.1991). The district court found "that the Defendant has obstructed justice by maintaining a false identity to law enforcement officers before making a demand for counsel." The court, therefore, applied a two-level enhancement to Manning's sentence for obstruction of justice under U.S.S.G. § 3C1.1. Manning contends that the two-level enhancement was error because Application Note 4(a) in the Commentary to section 3C1.1 of the Sentencing Guidelines states expressly that "providing a false name or

identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation" does "not warrant application of [the] enhancement." U.S.S.G. § 3C1.1 comment. (n. 4(a)). Manning argues that his use of a false identity in response to the arresting officers' inquiries did not cause a "significant hindrance to the investigation" because authorities correctly identified him shortly after his arrest, and it was not shown they had to expend any additional effort which would have been unnecessary had Manning used his real name. In the circumstances, we are compelled to agree with Manning that the two-level enhancement ran contrary to the sense of the Commentary.[3]

Application note 4, to U.S.S.G. § 3C1.1 was added in November, 1990 to clarify the kind of conduct intended to be excluded from the scope of the provision. *See* U.S.S.G. App. C (amend. 347) (effective November 1, 1990). The amendment plainly excludes the giving of a false name or identity at arrest as a basis for enhancing a sentence for the obstruction of justice, unless the false statement results in a "significant hindrance to the investigation."[4] *See Bell*, at 8–9 (discussing U.S.S.G. § 3C1.1's application to the use of false names and the making of false statements). The record in this case does not support a finding of investigative hindrance, and the court, indeed, pointed to no specific hindrance.

Manning was arrested on August 8, 1990. The transcript of the detention hear-

---

**2.** Section 3C1.1 provides for a two-level increase if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1.

**3.** We do not accept Manning's argument that his misstatements to the arresting officers regarding his identity were no more than a general denial of the charges against him. *See* U.S.S.G. § 3C1.1, comment. (n. 1). Misstating his name . was not a "general denial." Manning could have remained silent; he had no right to fabricate.

**4.** Application note 4(a) states, in relevant part

**4.** The following is a non-exhaustive list of examples of the types of conduct that, absent a separate count of conviction for such conduct, do not warrant application of this enhancement, but ordinarily can appropriately be sanctioned by the determination of the particular sentence within the otherwise applicable guideline range:

(a) providing a false name or identification document at arrest, except where such conduct *actually* resulted in a significant hindrance to the investigation or prosecution of the instant offense;....

U.S.S.G. § 3C1.1 comment. (n. 4(a)) (emphasis added).

ing, held on August 13, 1990, suggests that authorities had determined Manning's true identity at least by that date if not earlier. The testimony at the detention hearing revealed that prior to arresting Manning, investigating authorities had already determined that Manning was not Christopher Stevens, as Stevens had died September 2, 1986. Authorities confronted Manning with this knowledge at his arrest. One of the investigating agents testified that he first heard the name "Charles Manning" from Manning's girlfriend either the day of or the day after Manning's arrest. She told him that while she knew Manning as "Christopher Stevens," she once noticed medication in his apartment prescribed to "Charles Manning." On August 9, 1990, authorities searched Manning's apartment and found several documents under the name "Charles Manning." The agents testified that because the name "Charles Manning" had appeared several times at that point, they conducted a criminal records check on the name which revealed the outstanding bench warrants for Manning's arrest in Utah. From this information they were able to obtain a fingerprint classification for the "Charles Manning" wanted in Utah and a facsimile of his photograph. It seems probable that all this information was obtained on August 9, 1990—the day after Manning was arrested. At the very latest, authorities were reasonably certain by the date of the detention hearing—August 13, 1990—that the man they arrested purporting to be "Christopher Stevens" was in fact Charles R. Manning.

The record reveals no evidence tending specifically to show that the investigation of Manning was "significantly hindered" by Manning's misstatement of his identity to authorities.[5] It is unclear that the inves-

tigation would have proceeded any differently or any faster had Manning simply stated that he was Charles Manning at the time of his arrest. The arresting officers already knew that Manning was not Christopher Stevens prior to arresting him. Thus, Manning's statement to that effect alone did not throw them off. Authorities also knew that they were arresting a man pursuant to an investigation that established probable cause that this man was using false SSNs. Under such circumstances, even if Manning had correctly identified himself, investigating authorities certainly would have been compelled to proceed in a similar manner to confirm whether or not he was in fact Charles Manning. As their search of Manning's apartment revealed a third possible identity, that of Chris Kelley, authorities would have had to execute a criminal records check or employ some alternative procedure to determine whether their suspect was Charles Manning or Chris Kelley.

While we condemn Manning's misstatements about his identity to arresting officers, we feel bound by the Sentencing Commission's comments regarding interpretation of its guidelines. As the record does not support a two-level enhancement of Manning's sentence for obstruction of justice under U.S.S.G. § 3C1.1, we vacate Manning's sentence and remand for resentencing in accordance herewith.

*The conviction is affirmed. The sentence is vacated and the case remanded for further proceedings in accordance herewith.*

---

5. At the sentencing hearing the government argued that

> even if there is no *actual* obstruction that results from defendant providing a false name to law enforcement officers, that even the attempt to obstruct any investigation itself warrants enhancement to obstruction of justice and the comment testified to at trial in this matter made by this defendant to law enforcement officers at the time of the questioning of him when he said, "if you think I'm someone else, you prove it," that comment itself speaks of an attitude and an intent of

this defendant to do everything he could at that time to hinder this investigation.

This assertion is incorrect. Application note (4)(a) specifically provides that the two-level enhancement is only appropriate if providing a false name at arrest "*actually* resulted in a significant hindrance to the investigation or prosecution of the instant offense." U.S.S.G. § 3C1.1, comment. (n. 4(a)) (emphasis added). Where the government does not provide evidence that the investigation was *actually* hindered, the sentence may ordinarily not be enhanced under the guideline for obstruction of justice.