**UNITED STATES of America, Appellee,**

v.

**Ung KIM, a/k/a Steve Kim, Appellant.**

**No. 93–3219.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 15, 1994.

Decided May 20, 1994.

**514**

Barry L. Leibowitz, Rockville, MD, argued the cause, and filed the brief, for appellant.

Cynthia D. Walicki–Chan, Asst. U.S. Atty., Washington, DC, argued the cause, for appellee. With her on the brief, were Eric H. Holder, Jr., U.S. Atty., and Blanche L. Bruce, John R. Fisher, and Thomas J. Tourish, Jr., Asst. U.S. Attys, Washington, DC.

Before: SILBERMAN, WILLIAMS, and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant, a mortgage broker who pled guilty to submitting a false bank loan application, challenges the district court's two-level upward adjustment under the U.S. Sentencing Guidelines for more than minimal planning. Because the district court's determination was within its authority, we affirm.

## I.

In the fall of 1990, Mr. Sung Joon Ham approached appellant Ung (aka Steve) Kim, a mortgage broker, about securing a home equity line of credit on a private residence owned by Ham's mother and sister. Ham admitted that his mother and sister did not approve of the loan and that he asked for Kim's help in securing the loan without their consent. Appellant agreed and helped Ham complete the loan application which was submitted to Citibank in Washington, D.C. on October 18, 1990. The bank approved the loan for $232,000.

Soon thereafter, Kim obtained blank power of attorney forms from a loan settlement attorney. He brought the forms to a notary public, a friend, who, as a favor to Kim, notarized the blank, unsigned and unwitnessed forms. Kim then delivered the forms to Ham, who forged his mother's and sister's signatures. On November 28, 1990, appellant and Ham went to the loan settlement meeting and produced the forged powers of attorney as proof of Ham's authority to borrow against the house. Kim obtained more blank, notarized power of attorney forms in February, 1991, at Ham's behest, which the latter used to apply successfully for a $40,000 loan from Loan U.S.A.

Kim pled guilty to one count of submitting a false bank loan application in violation of 18 U.S.C. §§ 2, 1014 (1988). The presentence report recommended an offense level of 12 under the U.S. Sentencing Guidelines, which includes a two-level increase for "more than minimal planning." *See* U.S.S.G.

§ 2F1.1(b)(2)(A). The guidelines deem more than minimal planning to be implicated "in any case involving *repeated acts* over a period of time, unless it is clear that each instance was purely opportune." *Id.* § 1B1.1, Application Note 1(f) (emphasis added). Alternatively,

> "[m]ore than minimal planning" means *more planning than is typical for commission of the offense in a simple form.* "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense, other than conduct to which § 3C1.1 (Obstructing or Impeding the Administration of Justice) applies.

*Id.* (emphasis added). In recommending the two-level increase, the presentence report relied on the two occasions when Kim obtained blank notarized power of attorney forms (once for the Citibank application and once for the Loan U.S.A. application), which the report considered to be "repeated acts" under the guidelines. After oral argument, focusing on the meaning of repeated acts, the district court described the report as "inadvertently or perhaps slightly inartfully [sic] phrased." The court nevertheless adopted the two-level increase and sentenced Kim to 10 months imprisonment. The court relied on the alternative guideline interpretation that Kim had engaged in more planning than is typical for commission of the offense in a simple form since "without Mr. Kim's expertise in knowing how to go about brokering, this loan would not have occurred."

## II.

The government again, as it did before the district court, argues that the crime presents both guideline paradigms of more than minimal planning—repeated acts and more planning than is typical for the simple form of the crime. Appellant admits he twice procured blank power of attorney forms—which the government asserts are the repeated acts—but argues that the word "repeated" in the sentencing guidelines implies *more than two* acts. Two of our sister circuits have agreed with appellant's argument, *see United States v. Maciaga,* 965 F.2d 404, 407 (7th Cir.1992); *United States v.*

*Bridges,* No. 93–3175, 1994 U.S.App. LEXIS 4863, at *9–10 (10th Cir. Mar. 17, 1994), while the government concedes that no other court has adopted its definition of the phrase, *i.e.* that two acts meet the definition of "repeated."

The context within which the sentencing guidelines employ "repeated acts" belies the government's reading of the contested phrase. The Application Notes to section 1B1.1 give the following as examples of more than minimal planning:

> In a theft, going to a secluded area of a store to conceal the stolen item in one's pocket would not alone constitute more than minimal planning. However, repeated instances of such thefts *on several occasions* would constitute more than minimal planning....

> In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered would constitute more than minimal planning, as would *several instances* of taking money, each accompanied by false entries.

U.S.S.G. § 1B1.1, Application Note 1(f) (emphases added). "Several" means "an indefinite number more than two and fewer than many." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED at 2080 (1971). And while "repeated" could be thought to indicate simply more than once, as used in the guidelines, it more likely means "renewed or recurring *again and again.*" *Id.* at 1924 (emphasis added). We therefore agree with the Seventh and Tenth Circuits that "repeated acts" in the description of more than minimal planning contemplates at least three acts.

The district court, however, imposed the two-level increase based not on Kim's alleged repeated acts—as did the presentence report's recommendation—but rather because he engaged in "more planning than is typical for the commission of the offense in a simple form."[1] Kim, responding to this alternative

---

1. Appellant raised at oral argument the claim that the district court erred by independently

ground advanced by the government, argues that since processing the application was part of his ordinary duties as a broker, he did not engage in any planning other than committing the predicate offense of providing the blank power of attorney forms.[2] *See United States v. Maciaga,* 965 F.2d 404, 407 (7th Cir.1992). That the predicate crime itself requires special skills or involves many steps, so goes the argument, does not suggest that Kim engaged in more planning than is typical; it only means that the crime in its simple form is complicated.

■ Resolution of this issue turns, in our view, on the scope of our review. We have never squarely addressed the proper standard of review applicable to the district court's application of the guidelines to a set of facts (a so-called "mixed question of law and fact"). In *United States v. Barry,* 938 F.2d 1327 (D.C.Cir.1991), which decided whether the two-level enhancement for obstruction of justice provided by U.S.S.G. § 3C1.1 could be triggered by conduct unrelated to the offense of conviction, we said: "[o]n appeal, we will 'uphold the district court's sentence so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous.'" *Id.* at 1332. In so doing, we hinted at the existence of a dichotomy between factual findings—reviewed under the familiar "clearly erroneous" standard—and applications of the guidelines (law) to facts, which would be tested for "correctness" (presumably, like purely legal questions, *de novo*). *Id.* But, we relied, in drawing this apparent dichotomy, on a Second Circuit opinion, *United States v. Irabor,* 894 F.2d 554, 555 (2d Cir. 1990). Although the court in *Irabor* considered *de novo* whether the guidelines "applied" to certain conduct, the issue presented there was the purely legal one of whether as a matter of law the guidelines' two-level enhancement applies to conduct occurring *after*

the initiation of criminal proceedings. *See id.* at 555–56. Thus, the Second Circuit's position, which we cited with approval in *Barry,* drew a distinction between factual conclusions reviewed deferentially under the "clearly erroneous" standard, and legal questions reviewed *de novo.* Significantly, however, *Irabor* makes clear that the Second Circuit viewed the question of whether certain conduct constitutes "obstruction of justice" (that is, the application of the guidelines to facts) as consisting of a *"factual* conclusion." *Id.* at 555 (emphasis added). The court apparently recognized that Congress intended to give district court judges leeway in applying the guidelines to specific facts, and placed this category of mixed questions of fact and law on the "factual findings" side of the dichotomy—thereby subject only to "clearly erroneous" review.

Analytically, the question of whether certain undisputed conduct qualifies as obstruction of justice under section 3C1.1 and whether certain conduct constitutes "more than minimal planning" under section 2F1.1(b)(2)(A) are quite similar. Consistent with the Second Circuit's review of section 3C1.1 cases, the Seventh Circuit has applied the "clearly erroneous" standard of review to appeals challenging a district court's conclusion that certain conduct constituted "more than minimal planning," loosely terming that conclusion a "finding." *See United States v. Maciaga,* 965 F.2d 404, 406 (7th Cir.1992); *cf. also United States v. White,* 903 F.2d 457, 466 (7th Cir.1990) (characterizing the conclusion as a "factual determination").

The Tenth Circuit, on the other hand, would agree that those sorts of cases are subject to limited review, focusing instead on the language of 18 U.S.C. § 3742(e), which sets forth the standard of review under the guidelines. *See United States v. Smith,* 900 F.2d 1442, 1445 (10th Cir.1990). That statute provides, in relevant part:

substituting its own reasoning to justify the two-level increase, instead of relying on the analysis given in the presentence report. The disparity in reasoning, it is urged, violates the appellant's right to adequate notice of the proposed sentence and the justifications therefor. Appellant has waived the argument, however, by failing to raise it below, *see United States v. Williams,* 951 F.2d 1287, 1290 (D.C.Cir.1991), or in his opening brief before us. *See Corson & Gruman Co. v. NLRB,* 899 F.2d 47, 50 n. 4 (D.C.Cir.1990);

*Reyes–Arias v. INS,* 866 F.2d 500, 504 n. 2 (D.C.Cir.1989).

2. Appellant also claims that processing the application did not require his expertise as a broker, an argument we think specious since Kim helped draft the application, submitted it for fast-track approval, and represented himself as Ham's loan broker throughout the transaction.

Upon review of the record, the court of appeals shall determine whether the sentence—

(1) was imposed in violation of law; [or]

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

. . . .

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and *shall give due deference* to the district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e) (1988) (emphasis added). As is apparent, rather than creating a dichotomy, Congress crafted a trichotomy: purely legal questions are reviewed *de novo;* factual findings are to be affirmed unless "clearly erroneous"; and we are to give "due deference" to the district court's application of the guidelines to facts. "Due deference" presumably is meant to fall somewhere between *de novo* and "clearly erroneous," a standard of review that reflects an apparent congressional desire to compromise between the need for uniformity in sentencing and the recognition that the district courts should be afforded some flexibility in applying the guidelines to the facts before them. A district judge's determination that a given set of facts constitute "obstruction of justice" (as the guidelines use that term) or involve more than minimal planning, will typically not be exactly replicated in any other case. And therefore there is less reason to insist on the uniformity that a question of law typically requires. *Cf. Pierce v. Underwood,* 487 U.S. 552, 562, 108 S.Ct. 2541, 2548, 101 L.Ed.2d 490 (1988). As we understand the statute, we should thus defer to such a determination; we should not ask whether we would decide the issue the same way but rather provide something akin to the review we give administrative agency determinations of such mixed questions. By contrast, whether the word "repeated" means two or more than two is a garden variety question of law. It would not do for district judges to give conflicting answers to such a question.

■ Recognizing, then, that we must afford the district judge's determination due deference, we turn to the question whether the crime can be thought to have involved more planning than is typical. That all depends on how one views the offense. The government would focus on the submission of the false application as the predicate crime and the forged powers of attorney as a subsequent cover-up. That scenario fits the guidelines' example of an embezzler who creates false invoices or other devices to conceal his theft, actions that the guidelines consider to be more than minimal planning. *See* U.S.S.G. § 1B1.1, Application Note 1(f). Appellant resists this effort to break up the crime into its incremental steps, asserting instead that the application and the powers of attorney are all part of the loan process. A shoplifter who goes to a different part of the store to conceal his loot is not considered to have engaged in more than minimal planning, *see id.;* Kim argues that the government's formulation would break the single shoplifting crime into the two components of going to a secluded area and of concealing the loot.

The guidelines speak of more planning than typically needed to commit the offense *in a simple* form, not—as the government would have it—in *its most simple* form. A single false statement on an application, without more, certainly does not constitute more than minimal planning, but it does not follow that any other action added to the simple falsehood necessarily meets the standard. To so hold would be to increase the base sentence for all but the simplest criminal acts, a result that would make the concept of "enhancement" meaningless and, therefore, one that the guidelines could not have contemplated. *See United States v. Bridges,* 1994 U.S.App. LEXIS 4863, at *7 (10th Cir. Mar. 17, 1994). On the other hand, appellant knowingly filed the forged powers of attorney not as part of the initial loan application, but at the settlement meeting over a month later. After filing the false application (which itself subjected Kim to criminal liability), Kim secured blank forms, prevailed upon a friend to notarize them illegally, and then submitted the forgeries in order to support his initial lie. The district judge evidently viewed these actions as separate from the

application process, that is, as part of an effort to conceal the falsity of the application.

*United States v. Maciaga*, 965 F.2d 404 (7th Cir.1992), upon which appellant relies, is distinguishable. There, the court held that a security guard who deactivated the bank's alarm prior to stealing its money did not engage in more than minimal planning since deactivating the alarm was part of his normal duties. *See id.* at 407. A loan broker, by contrast, does not ordinarily use personal friendships to obtain falsely notarized documentation in order to complete a loan.[3] In sum, although the issue is close, in light of the deference owed the trial court, we accept its conclusion that Kim's actions constituted "more than minimal planning."

\*　　\*　　\*　　\*　　\*　　\*

Accordingly, the decision of the district court is

*Affirmed.*

---

**3.** Kim relies on the structure of the sentencing guidelines to refute the government's argument—previously suggested by another circuit, *United States v. West,* 942 F.2d 528, 531 (8th Cir.1991)—that the complex nature of the offense itself is indicative of more than minimal planning. Since the guidelines prescribe different base offense levels for different crimes, Kim argues that it is illogical to rely on the nature of the crime—rather than the defendant's conduct—in order to apply upward adjustments. We need not address this argument since we do not hold that the complexity of the loan process *per se* renders Kim's involvement more than minimal planning.