UNITED STATES of America,
Appellee,

v.

Nigel Judson MACCADO, Appellant.

No. 99–3101.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 6, 2000.

Decided Oct. 4, 2000.

Sandra G. Roland, Assistant Federal Public Defender, argued the cause for appellant. With her on the brief was A. J. Kramer, Federal Public Defender.

Luis Andrew Lopez, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher, Thomas J. Tourish, Jr., and Alan Boyd, Assistant U.S. Attorneys.

Before: WILLIAMS, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

Concurring opinion filed by Circuit Judge STEPHEN F. WILLIAMS.

ROGERS, Circuit Judge:

Nigel Judson Maccado appeals his conviction on the ground that the district court misapplied United States Sentencing Guidelines ("U.S.S.G.") § 3C1.1 (1995) by enhancing his sentence by two levels for obstruction of justice in the absence of a substantial effect on the investigation or prosecution of his case. He contends that the enhancement is unwarranted for his failure timely to comply with the court's order to give a handwriting exemplar for essentially two reasons. First, the nineteen-day delay in the taking of his handwriting exemplar that resulted from his noncompliance did not delay or otherwise hinder the scheduled judicial proceedings, and second, his guilty plea cured any obstruction. We hold that § 3C1.1 applies in the absence of a substantial effect on an investigation or prosecution, and accord due deference to the district court's determination that Maccado's deliberate disobedience of the court order warranted an enhancement under § 3C1.1. Accordingly, we affirm.

## I.

Maccado was indicted in 1998 for possession of false identification documents with intent to defraud the United States and for making false statements in a passport application. *See* 18 U.S.C. §§ 1028(a)(4), 1542. He ultimately pleaded guilty on August 17, 1998, to the false statements charge. According to the government's proffer at the time Maccado pleaded guilty, the charges stemmed from his submission on September 11, 1997, of a completed United States Passport Application (Form DSP-11) in the name of David Arnar Proctor, born December 17, 1957, in Washington, D.C. Maccado listed his social security number as 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 and presented as proof of citizenship a District of Columbia certificate with a recorded date of birth, as well as an employee identification card from his own construction company. He signed the form in the pres-

ence of the clerk at the Friendship Heights Post Office, who accepted the application on behalf of the Department of State. Several months later, Special Agent Leonard Codispot of the United States Department of State Bureau of Diplomatic Security obtained an arrest photograph of Maccado from the Montgomery County, Maryland, police records that matched the photo attached to the passport application. Agent Codispot also determined from the United States Immigration and Naturalization Service that Maccado was born in India in 1949, and was not a United States citizen and not entitled to a United States passport.

At a status hearing on Thursday, June 18, 1998, in contemplation of trial, the district court granted the government's motion to compel Maccado to submit a handwriting exemplar that day to Agent Codispot, who was present in the courtroom. When asked by the court if he understood the court's order, Maccado replied, "Yes, your Honor." Nevertheless, Maccado did not give the exemplar to the agent that day and had no further personal contact with the agent until July 7, 1998, when Agent Codispot obtained the exemplar from Maccado in Maryland. At that time Maccado was in the Charles County Detention Center in LaPlata, Maryland.[1]

At Maccado's sentencing hearing, Agent Codispot testified that after the June 18th status hearing, he accompanied Maccado and his wife to the first floor of the courthouse. Agent Codispot told Maccado to wait while he obtained a copy of the court order, and that the exemplar would be taken in a vacant room in the courthouse. When Agent Codispot returned minutes later, Maccado was gone; his wife explained that Maccado had left to move the car. After waiting for over an hour for Maccado to return, Agent Codispot re-

turned to his office and found a message from Maccado that his car had overheated and he had left it at his wife's office, that he had gone to visit a cousin in the hospital, and that he would do the "court-ordered things" at another time. Agent Codispot twice attempted unsuccessfully to reach Maccado at the pager number that Maccado had left as part of his recorded message.

Maccado's wife recounted somewhat different events. She testified that after the status hearing Agent Codispot informed them the exemplar would be taken at an office in Virginia, and that Maccado left the courthouse to retrieve the car so they could follow the agent to Virginia. Upon returning to her office later that day, Mrs. Maccado found a message from her husband explaining that he had encountered car problems and another message from her cousin's wife stating that Maccado had been to the hospital to get water for the car. Upon returning home around 4:30 p.m., Mrs. Maccado found her husband at home. She telephoned a mechanic and dropped the car off that night, leaving a message for the mechanic about the problem. She also telephoned Agent Codispot, leaving a message about rescheduling the taking of the exemplars.

At sentencing, the district court found: that there has been obstruction of justice; that the obstruction of justice occurred when, notwithstanding a court order to go with the FBI agent [sic] to give a handwriting exemplar, and it's clear from the transcript that I told the defendant that he had to go with that agent that day to provide a handwriting exemplar, notwithstanding that, he didn't, and he hasn't offered any plausible explanation or reason why he didn't.

I mean, I think that if I were to credit his testimony that he had to take his car to get it fixed, it's not a mitigating cir-

---

1. Two days after the status hearing at which he was ordered to provide the exemplar to Agent Codispot, Maccado attempted suicide. He was hospitalized and thereafter trans-ferred to the Charles County Detention Center based on a Maryland warrant for a parole violation.

cumstance to offset the failure to comply with the court directive to have that handwriting exemplar provided that day, and his failure to do so rises to the level of an obstruction of justice.

After applying the two-level enhancement under U.S.S.G. § 3C1.1 and crediting Maccado for acceptance of responsibility, *id.* § 3E1.1, which resulted in a sentencing range of 12 to 18 months, the court sentenced Maccado to 18 months' incarceration and three years' supervised release.

## II.

On appeal, Maccado contends that mere disobedience of a court order is insufficient to constitute obstruction of justice under U.S.S.G. § 3C1.1 where the ordered evidence is produced within a relatively brief time prior to any scheduled court hearing and, thus, does not substantially influence the investigation or prosecution. Combined with his guilty plea to one count, that he maintains effectively cured any prior obstructive conduct, Maccado contends that the district court's application of U.S.S.G. § 3C1.1 involved an erroneous interpretation of law that is subject to de novo review.

■■■ As to our standard of review, we agree with Maccado. Maccado does not challenge the district court's findings that his conduct was unjustified, or that he materially breached the district court's order. Nor does he claim that he had a necessity defense or that his actions were not willful. Consequently, the only issue presented on appeal is whether § 3C1.1 requires that a defendant's conduct have a substantial effect on the investigation or prosecution of his case, and if so, whether a guilty plea negates the obstruction of justice. These are questions of law that the court reviews de novo. *See United States v. (Michael) Taylor,* 997 F.2d 1551,

1560. (D.C.Cir.1993). Upon determining whether there is a substantial effect requirement in § 3C1.1, the court must accord due deference to the district court's factual determination that the defendant's conduct is within the range of punishable actions. *See In re Sealed Case,* 199 F.3d 488, 491 (D.C.Cir.1999); 18 U.S.C. § 3742(e); *see also United States v. Drew,* 200 F.3d 871, 880 (D.C.Cir.2000).

■■■ The relevant version of § 3C1.1 of the Sentencing Guidelines instructs that:

[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instance offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (1995).[2] In the Application Notes to the Guidelines, which the court must treat as authoritative, *see Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), the Sentencing Commission has included two non-exhaustive lists of examples to illustrate some of the kinds of conduct that do and do not fall within § 3C1.1. *See* Application Notes 3 & 4. None of the examples is precisely on point. By way of caveat, Application Note 2 states that "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness ... [and] is not subject to precise definition." Application Note 3 gives as examples of when the enhancement is properly imposed "committing, suborning, or attempting to suborn perjury; ... escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding; ... [or] providing materially false information to a judge or magistrate." U.S.S.G. § 3C1.1, Application Note 3(b), (e), (f).[3] On the other hand, examples of acts that do not qualify for punishment

**2.** The district court sentenced Maccado under the 1995 edition of the Sentencing Guidelines, and we refer to that edition. Maccado's offense occurred in September 1997, and the relevant guideline was modified in November 1997.

**3.** Application Note 3 lists the following examples:

under § 3C1.1 include "providing incomplete or misleading information, not amounting to a material falsehood, in respect to a presentence investigation; ... [and] avoiding or fleeing from arrest." *Id.*, Application Note 4(c), (d).[4]

By providing non-exhaustive illustrations, the Sentencing Commission has left considerable discretion in applying § 3C1.1 to the sentencing court. In view of the variety of situations that might constitute obstruction of justice, the Commission necessarily relied on the district court's reasoned exercise of discretion in applying § 3C1.1 to particular fact patterns. The question, therefore, is how the threshold for applying § 3C1.1 is to be defined. Efforts by the circuit courts of appeal to identify that threshold have not been particularly successful in view of the breadth of the text of § 3C1.1.

For example, the Fifth Circuit has derived two general principles from the commentary's lists based on two factors that it has presumably distilled from the commentary. The two factors are: "(1) whether the conduct 'presents an inherently high risk that justice will be obstructed;' and (2) whether the conduct 'requires a significant amount of planning,' as opposed to being 'the result of a spur of the moment decision' or 'stem[ming] from merely panic, confusion, or mistake.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir.2000) (quoting *United States v. Greer*, 158 F.3d 228, 235 (5th Cir.1998)). A classification relying on this distinction, articulated in *United States v. Draves*, 103 F.3d 1328, 1337 (7th Cir.1997), as the difference between "panicked, instinctive flight" and "calculated evasion," appears to place the threshold higher than the Commission's language and listings suggest, because the list of sanctionable conduct in Application Note 3 includes actions that do not seem to require much planning.[5]

The circuits, however, have had little problem imposing § 3C1.1 enhancements

(a) threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so;

(b) committing, suborning, or attempting to suborn perjury;

(c) producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding;

(d) destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (*e.g.*, shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so; however, if such conduct occurred contemporaneously with arrest (*e.g.*, attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender;

(e) escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding;

(f) providing materially false information to a judge or magistrate;

(g) providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense;

(h) providing materially false information to a probation officer in respect to a presentence or other investigation for the court;

(i) conduct prohibited by 18 U.S.C. §§ 1501–1516.

4. Application Note 4 lists the following examples:

(a) providing a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense;

(b) making false statements, not under oath, to law enforcement officers, unless Application Note 3(g) above applies;

(c) providing incomplete or misleading information, not amounting to a material falsehood, in respect to a presentence investigation;

(d) avoiding or fleeing from arrest (*see, however*, § 3C1.2 (Reckless Endangerment During Flight)).

5. Our concurring colleague refines the Fifth Circuit's analysis slightly. *See* concurring opinion at 775.

when a defendant refused to cooperate with an order to provide a handwriting exemplar. *See United States v. Brazel,* 102 F.3d 1120 (11th Cir.1997); *United States v. (David) Taylor,* 88 F.3d 938 (11th Cir.1996); *United States v. Ruth,* 65 F.3d 599 (7th Cir.1995); *United States v. Reyes,* 908 F.2d 281 (8th Cir.1990). As the Second Circuit observed in *United States v. Valdez,* 16 F.3d 1324 (2d Cir.1994), "there are few better examples of a classic obstruction of justice than a defendant who refuses to give handwriting samples when compelled by subpoena [to do so]." *Id.* at 1335. It is true that these cases involved defendants who either refused to provide exemplars and never supplied them, or repeatedly refused and then belatedly provided the handwriting samples. Still, there is no suggestion that more than a single act without additional obstreperous, deliberate, or disruptive conduct is required under § 3C1.1, much less that a meaningful distinction exists between never submitting an exemplar and submitting one late. As the Seventh Circuit has observed, the guideline is concerned with the effect of potentially obstructive conduct rather than formal definitions. *Cf. United States v. Harrison,* 42 F.3d 427, 431 (7h Cir.1994).

Other circuit cases emphasize the obstructive nature of avoiding full compliance with an order to provide an exemplar. Both the Second and Seventh Circuits have affirmed § 3C1.1 enhancements when a defendant disguised a handwriting exemplar that was to be compared with writings to be introduced at trial. *See United States v. Yusufu,* 63 F.3d 505, 514–15 (7th Cir.1995); *Valdez,* 16 F.3d at 1335–36. As in the instant case, the exemplars sought in *Yusufu* and *Valdez* were for comparison with writing that was to be introduced at trial. *See Yusufu,* 63 F.3d at 514; *Valdez,* 16 F.3d at 1335. Furthermore, in *United States v. Ruth,* 65 F.3d 599 (7th Cir.1995), the Seventh Circuit affirmed a § 3C1.1 enhancement based on a pretrial finding of contempt for two refusals to provide a handwriting exemplar, even though the

government "eventually found another way to prove its case and did not try a third time to take the handwriting exemplars." *Id.* at 606.

In addition, a series of cases have applied § 3C1.1 to out-of-court conduct that is analogous to the type of conduct at issue. The Second Circuit in *United States v. Defeo,* 36 F.3d 272, 276 (2d Cir. 1994), affirmed enhancement under § 3C1.1 for a "four-month failure to report to pretrial services." The Ninth Circuit in *United States v. Draper,* 996 F.2d 982 (9th Cir.1993), affirmed enhancement under § 3C1.1 for failure to report to a community corrections center during pre-trial release, rejecting both the view that a "significant disruption" was required and the view that "a two week absence is not sufficient to warrant the obstruction adjustment." *Id.* at 984–87.

The line of authority applying § 3C1.1 to handwriting exemplars and out-of-court conduct is persuasive for three reasons: the Commission has (1) used broad language in § 3C1.1; (2) included egregious as well as non-egregious conduct in its list of acts that warrant a sentencing enhancement; and (3) determined that for most of the listed conduct sanctionable under § 3C1.1, actual hindrance is an irrelevant consideration. By contrast, our concurring colleague's interpretation does not adequately explain either the language of § 3C1.1 or the two lists in the commentary. The Commission not only included attempts in § 3C1.1 but stated that "willfully failing to appear, as ordered, for a judicial proceeding" is punishable under § 3C1.1 without actual hindrance, even though such failures do not seem necessarily to have a high risk of materially impeding the criminal justice process and might encompass spontaneous conduct. In *(Michael) Taylor,* 997 F.2d at 1559–60, the court, in rejecting a specific mens rea requirement, upheld a § 3C1.1 enhancement for obstruction where the defendant failed to return to the courtroom before the jury

returned its verdict, even though defense counsel waived his presence and the proceedings continued. The viability of our concurring colleague's distinction cannot rest on the fact *(Michael) Taylor* involved a "judicial proceeding" rather than an "ancillary process," *see infra* concurring opinion at 4, for the obstruction that occurred in both cases was adverse to the court's process.

■ Accordingly, we hold that a § 3C1.1 enhancement can be based on a defendant's failure to comply with a court order to provide a handwriting exemplar in connection with the underlying pending charges regardless of whether the failure has a substantial effect on the investigation or prosecution. A defendant's failure to provide the ordered exemplar clearly has the potential to weaken the government's case, prolong the pendency of the charges, and encumber the court's docket with an unnecessary trial. The two circumstances on which Maccado relies are unavailing. Whether or not the scheduled judicial proceedings are postponed is not dispositive, *see Defeo,* 36 F.3d at 276–77; those proceedings might occur as scheduled, but without a defendant's exemplar or adequate time to evaluate or reach a plea agreement, the course of the proceeding could be very different. The fact that a defendant ultimately enters a guilty plea to some of the charges cannot be dispositive; until the district court has accepted the plea, *see* Fed.R.Crim.P. Rule 12, anything could happen. *See, e.g., supra* n. 1. Moreover, the conclusion that a plea could erase an actual obstruction of justice would be inconsistent with § 3C1.1's inclusion of attempts. Each of these circumstances, in other words, fails to eliminate the concern about the potential effect of the defen-

dant's conduct that the guideline is addressing.[6] While we do not adopt a *per se* rule for handwriting exemplars, for the Commission's reference in Application Note 2 to the "degree of planning" and "seriousness" of the obstructive conduct are relevant factors for the district court to consider in deciding whether a § 3C1.1 enhancement is warranted, we reject a heightened threshold requiring conduct that has a substantial effect on the investigation or prosecution. It remains for the district court to determine whether a defendant has offered a sufficient reason for failing to comply with the court order as would make application of the guideline inappropriate. As stated in *United States v. Baker,* 641 F.2d 1311 (9th Cir.1981), "criminal contempt requires a contemnor to know of an order and willfully disobey it.... A good faith effort to comply with the order is a defense, although delaying tactics or indifference to the order are not." *Id.* at 1317 (citations omitted).

■ Having concluded that the threshold for application of § 3C1.1 does not bar enhancement for failing to comply with a court order in the absence of a substantial effect, the remaining question is whether the district court's findings were in some manner lacking. We find no clear error. *See generally United States v. Saro,* 24 F.3d 283, 286 (D.C.Cir.1994). Under § 3C1.1 the district court could reasonably determine that Maccado's failure to comply with a clearly understood order was inadequate. Not only did Maccado's explanation seem implausible, it failed to explain why he did not provide his exemplar, or at least make arrangements to provide it, before he went to the hospital and was thereafter taken into custody, where his exemplar, albeit probably in a disguised

---

6. The cases on which Maccado relies are distinguishable for the reason that the Application Notes require that the giving of false identification information to authorities actually hinder the investigation or prosecution of the case. *See United States v. Manning,* 955 F.2d 770 (1st Cir.1992); *United States v. Robinson,* 978 F.2d 1554 (10th Cir.1992). Like-

wise, Maccado's reliance on *United States v. Tabares,* 951 F.2d 405 (1st Cir.1991), is misplaced; the materiality of Maccado's handwriting exemplar, which was relevant to the prosecution of his case, is undisputed. *See United States v. Smaw,* 993 F.2d 902, 904 (D.C.Cir.1993).

form, was finally obtained.[7] Maccado could hardly contend that the district court's interpretation of his conduct as being consistent with obstruction is clearly erroneous, for Maccado's version of events is undermined by Agent Codispot's testimony that Maccado's telephone message stated he would take care of the "court-ordered things" at another time, thus indicating a deliberate, planned decision not to comply with the court order, a serious matter in and of itself. Consistent with the Sentencing Commission's acknowledgment of the need for case-by-case determinations, *see* Application Note 2, these are circumstances where the court owes due deference to the district court's application of a guideline. *See In re Sealed Case*, 199 F.3d at 491.

Accordingly, we affirm the appealed judgment.

STEPHEN F. WILLIAMS, Circuit Judge, concurring:

At the initial status hearing on Maccado's indictment, the district court ordered him to provide a federal agent a handwriting sample. Maccado disappeared. The district court's discussion of Maccado's explanation, recounted in the majority opinion ("Maj. Op.") at 768–69, strikes me as somewhat ambiguous, but I accept the majority's reading: namely that the court, rather than finding the explanation insufficient, simply disbelieved it. On that view, Maccado's disappearance looks like a deliberate and considered decision to pursue a course tending to delay the enforcement of the criminal law, and perhaps to thwart it. On that assumption we must consider whether there was error in the district court's decision under the Sentencing Guidelines to add a two-point enhancement for obstruction of justice under § 3C1.1.

In the course of affirming, the majority appears to establish a lower threshold for enhancement than § 3C1.1 permits. The

Guidelines provide for the enhancement "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. To elucidate this language the Sentencing Commission has included in its commentary two nonexhaustive lists, one of acts qualifying for the enhancement and the other of non-qualifying acts. We owe the commentary deference. *Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993); see also U.S.S.G. § 1B1.7 (1995). Defendant's conduct is not among the specific examples, so we must try to discern the pattern and see where Maccado's conduct fits best.

To help the reader navigate through the two lists, I offer in advance the general principles that the Fifth Circuit has drawn from them. It found that the enhancement should depend on the inherent tendency of the conduct actually to obstruct justice and on the deliberateness of defendant's behavior: "(1) whether the conduct 'presents an inherently high risk that justice will be obstructed;' and (2) whether the conduct 'requires a significant amount of planning,' as opposed to being 'the result of a spur of the moment decision' or 'stem[ming] from merely panic, confusion, or mistake.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir.2000) (internal citation omitted). The acts listed by the commentary as qualifying for enhancement are, in the Fifth Circuit's view, ones that are "egregiously wrongful," involving both considerable advance planning *and* a high risk of derailing an investigation or prosecution. *United States v. Greer*, 158 F.3d 228, 235 (5th Cir.1998). In support it points to language in the commentary noting the range of "degree of planning[ ] and seriousness" that obstruction of justice issues may present. *Id.* at 234. In fact, I question whether every item in the Com-

---

7. At sentencing, the government presented evidence that Maccado's exemplar was "not naturally executed," and that when giving his exemplar, Maccado "was straining" and "bearing down with a lot of pressure."

mission's lists handily fits the Fifth Circuit's explanation, but it is a useful starting point.

Application Note 3 gives a non-exhaustive list of acts calling for enhancement:

(a) threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so;

(b) committing, suborning, or attempting to suborn perjury;

(c) producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding;

(d) destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (*e.g.*, shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so; however, if such conduct occurred contemporaneously with arrest (*e.g.*, attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender;

(e) escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding;

(f) providing materially false information to a judge or magistrate;

(g) providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense;

(h) providing materially false information to a probation officer in respect to a presentence or other investigation for the court;

(i) conduct prohibited by 18 U.S.C. §§ 1501–1516.

This adjustment also applies to any other obstructive conduct in respect to the official investigation, prosecution, or sentencing of the instant offense where there is a separate count of conviction for such conduct.

U.S.S.G. § 3C1.1, Application Note 3. Many of these acts easily score on both the factors identified by the Fifth Circuit. Example (g), however, seems to embrace a defendant's spontaneous deception of a law enforcement officer—but only if the deception in fact generates a "significant" obstruction or impediment.

Application Note 4 gives examples of conduct not qualifying for an enhancement:

The following is a non-exhaustive list of examples of the types of conduct that, absent a separate count of conviction for such conduct, do not warrant application of this enhancement, but ordinarily can appropriately be sanctioned by the determination of the particular sentence within the otherwise applicable guideline range:

(a) providing a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense;

(b) making false statements, not under oath, to law enforcement officers, unless Application Note 3(g) above applies;

(c) providing incomplete or misleading information, not amounting to a material falsehood, in respect to a presentence investigation;

(d) avoiding or fleeing from arrest (*see, however*, § 3C1.2 (Reckless Endangerment During Flight)).

U.S.S.G. § 3C1.1, Application Note 4. Given Note 3(g) and the second part of Note 3(d), and the re-appearance of concern for actual obstructive effect in 4(a) and 4(b), I might amend the Fifth Cir-

cuit's classification to say that generally the enhancement is due (1) when the conduct is the result of planning and is highly likely to cause a serious derailment of the process, or (2) when conduct, even if spontaneous, actually does cause such a derailment. Such a view puts the risk of derailment largely on the perpetrator. Other courts appear to rely on the distinction between planned and high risk conduct, on one hand, and instinctive and low risk conduct, on the other. See *United States v. Draves*, 103 F.3d 1328, 1337 (7th Cir.1997) (holding obstruction enhancement improper when defendant fled from the back of a patrol car during his arrest; "panicked, instinctive flight" must be distinguished from "calculated evasion").

"[W]illfully failing to appear, as ordered, for a judicial proceeding," see Application Note 3(e), appears not to fit readily the Fifth Circuit's taxonomy. Such failures do not seem necessarily to have a high risk of materially impeding the criminal justice process—except in the sense of to some degree wasting judicial resources; and, depending on the breadth of "willfully," these acts might or might not encompass spontaneous conduct. The language is, however, confined to a "judicial proceeding," rather than reaching any neglect of any judicial order, and would not seem necessarily to encompass a judicial order to turn up for some ancillary process such as giving a handwriting sample out of court. Although courts have held that the failure to appear for a non-judicial proceeding qualifies for a § 3C1.1 sentencing enhancement, these courts also found the defendant acted in a deliberate and calculated fashion. See *United States v. Defeo*, 36 F.3d 272, 276 (2d Cir.1994) (upholding § 3C1.1 enhancement for four month failure to report to pretrial services because it was comparable to escape from custody); *United States v. Mondello*, 927 F.2d 1463, 1466–67 (9th Cir.1991) (contrasting defendant's two-week "cat-and-mouse game of avoiding the authorities" after arrest with very different "situation where ... a criminal is surprised in the act of committing a crime

and makes an evasive dodge to avoid apprehension").

The majority's characterization of the Fifth Circuit's analysis seems to me incorrect. The analysis does not set actual hindrance as a threshold requirement for the enhancement, compare Maj. Op. at 772, and it does not read out the attempt language in § 3C1.1, compare Maj. Op. at 771. It requires actual hindrance *only* when the defendant's act is better viewed as spontaneous than deliberate (in the sense of deliberated). Also contrary to the majority, I do not see how the Sentencing Commission's inclusion of *attempts* to obstruct provides any basis for some sort of across-the-board lowering of the bar. Compare *id.* For example, one who attempts to escape from custody before trial deserves the enhancement, even if he is foiled by an alert guard. See Application Note 3(e). But that is no basis for diluting the requirement of actual impact expressed by the Commission in cases such as 3(g).

The majority goes some way to erase all the distinctions that the Commission sought to draw. It characterizes the Commission as having "included egregious as well as non-egregious conduct in its list of acts that warrant a sentencing enhancement," Maj. Op. at 771, and says that the Seventh Circuit in *Draves* placed "the threshold higher than the Commission's language and listings suggest," Maj. Op. at 770. Obviously the margin between "egregious" and "non-egregious" is vague, but the Commission was plainly trying to set up a hierarchy. In Application Note 2 it stresses that "Application Note 4 sets forth examples of *less serious* forms of conduct to which this enhancement is not intended to apply, but that ordinarily can appropriately be sanctioned by the determination of the particular sentence *within* the otherwise applicable guideline range." U.S.S.G. § 3C1.1, Application Note 2 (emphasis added). By refusing to apply § 3C1.1 to "panicked, instinctive flight", the court in *Draves* was merely honoring

the Commission's scheme and leaving punishment of "less serious" obstructions to adjustment within the otherwise prevailing sentencing range.

Accepting the district court's view of Maccado's conduct as deliberate, there remains the question of the risk (or reality) that his actions would seriously impede his prosecution. In several cases courts have found a deliberate, affirmative refusal to provide a handwriting sample grounds for enhancement—in many of them the refusal was repeated. *See United States v. Brazel*, 102 F.3d 1120, 1163 (11th Cir.1997) (upholding enhancement where the defendant affirmatively refused to provide, and never supplied, sample); *United States v. Taylor*, 88 F.3d 938, 944 (11th Cir.1996) (upholding enhancement for defendant's "repeated refusals to supply handwriting exemplars, and his effort to disguise his handwriting when he did supply them"); *United States v. Ruth*, 65 F.3d 599, 608 (7th Cir.1995) (upholding enhancement where the "court twice ordered handwriting exemplars, and [defendant] twice failed to comply"); *United States v. Reyes*, 908 F.2d 281, 290 (8th Cir.1990) (upholding enhancement where defendant refused to comply with handwriting sample order and never supplied one). Maccado's behavior seems to have posed less risk and caused less actual impact on law enforcement. Indeed, if we exclude days in the hospital or in custody, only two days passed between the June 18, 1998 order and the actual taking of an example. Maccado seems reminiscent of the luckless Conrad Hensley in Tom Wolfe's *A Man in Full*, though to be sure a good deal more feckless. But his hospitalization and custody may be viewed as windfalls, so that—given the deference we owe the district court's application of law to facts, see *United States v. Kim*, 23 F.3d 513, 517 (D.C.Cir. 1994)—we cannot reverse the district court for its implicit judgment that Maccado's actions presented a serious risk of derailing justice.

Accordingly, I join the court in affirming the judgment.